## TIPPLE v HIGH STREET HOTEL CO.

Ohio Appeals, 2nd Dist, Franklin Co

No 3369. Decided Oct 3, 1941

Hugh Huntington, Columbus, and Angus M. Holmes, Columbus, for plaintiff-appellee.

Vorys, Sater, Seymour & Pease, Columbus, for defendant-appellant.

## OPINION

By GEIGER, PJ.

This matter is before this Court on appeal by the defendant below from a judgment of the Court of Common Pleas awarding damages in the sum of $2500 in favor of the plaintiff. The appeal is on questions of law.

The amended petition states in substance that the defendant is engaged, among other things, in doing a general hotel restaurant catering business; that as a part of its business it operates a public restaurant in the Chittenden Hotel in the City of Columbus and there serves and sells food for human consumption to patrons and holds itself out as dispensing pure and wholesome food.

As a first cause of action it is stated that on or about June 30, 1939, the plaintiff entered defendant's restaurant and ordered a meal consisting of waffles, sausages and coffee; that the defendant by its agents sold and served to the plaintiff poisoned and unwholesome sausages, unfit for human consumption and injurious to health of persons eating thereof; that the plaintiff ate said sausages and as a result became violently ill; that the defendant was negligent, which negligence was the proximate cause of her injury as follows:

(1) In selling and serving to plaintiff for consumption the food which was tainted and unfit for human consumption.

(2) In failing to properly cook said food.

(3) In failing to discover the tainted condition before serving to plaintiff.

(4) In failing to properly inspect the food before serving.

It is alleged that as a direct and proximate result of such negligence the plaintiff became violently ill and that her life was endangered, and that the plaintiff was thereby afflicted as set out in the petition; that prior to the eating of the sausages she was in good health and capable of earning a salary of $60.00 per month, but that since she had been debilitated and sick and incapable of engaging in her ordinary and usual activities, and that said incapacity is permanent; all to her damage in the sum of $20,500.00.

### Second Cause of Action.

That on said date the plaintiff purchased the food mentioned for the purpose of immediate consumption; that said food was furnished with the warranty that it was pure and wholesome

and fit for human consumption, but that the same was unwholesome. The plaintiff recites the damage she suffered in consequence thereof, on account of which she has been permanently injured.

### Answer.

As an answer defendant admits certain allegations as to the operation of its business and the sale of wholesome food. It admits the purchase of the food by the plaintiff.

### First Defense.

As a first defense to both of plaintiff's causes of action defendant denies the allegations not specifically admitted and specifically denies that it served the plaintiff any food that was tainted or unfit for human consumption and denies that plaintiff suffered any ill consequences.

### Second Defense.

For its second defense defendant alleges that the plaintiff was on said date in the employ of the defendant hotel as a clerk at a cigar stand; that by reason of said employment and as a partial compensation defendant permitted plaintiff to charge at the restaurant the cost of her meals at 60% of the price charged others; that on said date plaintiff was performing duties as an employee of defendant hotel and had not left the premises of the defendant after commencing her duties as an employee, and that she charged said meal in the defendant's restaurant in accordance with the agreement; that at said time she was in the employ of the defendant and said acts were done by reason of said employment in the course of and in the scope of said employment; that at said time defendant employed more than three persons regularly in and about its place of business and was a contributor to the Workmen's Compensation Fund of the State of Ohio and had complied with the compensation laws.

### Reply.

For a reply the plaintiff admits she was employed as a clerk at the cigar stand; that she was permitted to charge the cost of her meals to her pay account and to pay only 60% of the cost thereof; that she had not left the premises on said date after commencing her duties and that she charged the said meal against her pay account. She denies the other allegations of the answer.

The cause was submitted to a jury which rendered a verdict in her favor on the 29th of November, 1940, for the sum of $2500.00. An appropriate motion for a new trial was filed and overruled, the grounds thereof being those usually alleged in such motions, with the addition that the court erred in refusing to give before arguments requests Nos. 5 and 6 made by the defendant for special instructions, and that the court erred in refusing to charge the jury as requested; that the court erred in admitting and excluding certain evidence, and further in overruling the defendant's motion for a directed verdict at the close of the plaintiff's case and of all the evidence.

The Court entered judgment for the amount of the verdict and proper steps were taken to lodge the case in this court.

The eight assignments of error may be summarized to the effect that the court erred in overruling defendant's motion for a directed verdict; in refusing to submit the defendant's second defense; in refusing to give the charges requested; that the verdict is excessive; that the court erred in awarding interest on the judgment from the date of the injury rather than from the entry of the judgment; that the court erred in its general charge; and that the verdict was against the weight of the evidence.

### THE FACTS

There is not a great deal of controversy as to certain of the facts in this case and they may be briefly summarized to the effect that the plaintiff was employed to work eight hours a day in charge of the defendant's cigar stand; that for one week the time of her employment was from 7:00 A. M. to 3:00 P. M. and the next week, from 3:00 P. M. to 11:00 P M., she being off one day

a week. In the course of her employment she was furnished money by the defendant to run her shift at the stand during which time she was personally responsible. She had no specific time off for her meals and no person was detailed to relieve her. She had the right to make such arrangements as she could with other employees while she went to the rest room or to lunch. Near the cigar stand there was operated by the defendant a restaurant where employees, including the plaintiff, were given a 40% discount on meals and were permitted to sign the food checks as against their salary. Plaintiff, between the date of her employment and the date upon which it was alleged she was poisoned by the food, frequently ate at the restaurant of the defendant, but was under no contract or obligation to eat there. She was perfectly free to secure her meals wherever she might desire, either at the defendant's restaurant or at adjacent places where food was served. She availed herself of both services. When eating at the defendant's restaurant she usually sought a table from which she could keep the cigar stand under observation and frequently returned from her table to wait upon customers. On the day in question her shift began at 7:00 A. M. At noon she could find no one to relieve her and did not find an opportunity to go into the restaurant until 1:30, where she ordered the meal consisting of sausages, waffles, syrup, butter, and coffee, the sausages being broiled. During the course of her meal she observed customers at her unattended cigar stand and picked up her lunch and took it to the cigar stand and after waiting upon customers finished it as she worked. She left the hotel about 3:15 P. M. for her own residence and soon after arriving there was seized with sharp pains in the abdomen followed by nausea and vomiting. A doctor was called and was in attendance upon her daily for five or six days and thereafter less frequently. The doctor testifies in detail as to her sickness and symptoms and positively stated that in his judgment her illness was caused by food poisoning taken into her system by way of the sausages she ate at the meal in question.

After the plaintiff had introduced her evidence and the court had overruled motion for directed verdict the defendant introduced the evidence of various witnesses. Their testimony covered in detail the process by which the sausages were produced and the method of distribution and the care between the time the same were delivered and were served to customers, including in detail the method of refrigeration. There was also evidence of the cook who prepared the sausages for consumption.

The defendant also introduced expert testimony dealing with the various forms of food poisoning and the bacteria present in food which may or may not be harmful. It was testified that most of the harmful bacteria are destroyed by heating to a temperature beyond the boiling point of water, and that broiling produces a heat higher than the boiling point of water.

The experts testified to experiments made by them on June 19, 1940, about a year after the incidents complained of in the petition, with sausages delivered in six-pound packages from Armour & Co., from whom the sausages alleged to have caused the trouble, were purchased in 1939. These experiments were described in great detail and the conclusion was arrived at by the experts that the sausages eaten by the plaintiff in 1939 could not have caused the illness of which she complained.

The testimony of physicians was also introduced to the effect that the sickness described did not, as a matter of fact arise from food poisoning, but was acute indigestion caused by error in diet and the fact that the meal contained an excessive amount of fat, and that the plaintiff at the time she took the same was exhausted by her prior service at the cigar counter.

Considering this testimony touching the production, distribution, care in handling and in cooking, we are impressed with the strength of the de-

fense that the plaintiff's sickness was not caused by any of the mentioned imperfections of the sausage. This view is also strengthened by the fact that during the day upon which the sausage was delivered to the hotel in a six pound package, about 100 pounds produced at the same time were distributed to grocers and other restaurants under the same conditions as the sausage served to the plaintiff and that no complaint was raised to any of such sausage so delivered to other restaurants or private families.

We are of the opinion that the defendant made a strong defense upon the issues made by its first defense, which is a specific denial that it served any food that was tainted, poisoned, diseased or unfit for human consumption, and the further denial that the plaintiff suffered any ill consequences as a result of eating this food.

However, we are confronted with the fact that this was an issue properly made by the pleadings and properly submitted to the jury under correct instructions of the court that the burden was upon the plaintiff to prove by a preponderance of the evidence that her illness was caused by the sausage which she ate, and that the same was either poisoned, adulterated or unfit for human consumption. The Court also charged that the fact that the plaintiff became ill after eating the sausages is not of itself sufficient evidence that the sausages caused the illness, or that they were unfit for human consumption.

The Court further instructed the jury that if it was unable to determine by a preponderance of the evidence whether the plaintiff's illness was caused by contaminated food or by a gross error in diet, then the verdict must be for the defendant.

The plaintiff produced evidence of her undoubted illness and the evidence of her attending physician and other medical testimony to the effect that her illness was caused by food poisoning through the instrumentality of the sausages. The jury considered all this evidence under the proper instructions

of the Court and found in favor of the plaintiff.

As a reviewing court we are unable to say that the jury was wrong in its conclusion and that the court committed error in refusing to sustain the motion of the defendant for an instructed verdict on the ground that the plaintiff had failed to produce evidence sustaining her allegations.

The first question is whether or not the plaintiff may recover against the defendant as a result of damage arising from the sale of unfit food. This question is affirmatively determined by the case of **Great Atlantic & Pacific Tea Company v Hughes, 131 Oh St 501; Yochem v Gloria Inc., 134 Oh St 427.**

There is an assignment of error to the effect that the verdict is excessive. We find no merit in this as the plaintiff was seriously ill and has shown that she suffered a permanent injury.

This disposes of the first, second, fifth and eighth assignments of error.

We now approach the novel and difficult question raised by the second defense which we briefly restate; that on the date in question the defendant employed more than three persons about its place of business and was a contributor to the Workmen's Compensation Fund, and had complied with the compensation laws of the state, and that at the time the plaintiff ordered and ate said meal she was in the employ of the defendant and said acts were done by reason of said employment in the course of and in the scope of said employment. This defense is urged with great skill by the defendant, it being contended that inasmuch as her employment required her to be in charge of the cigar stand from 7:00 in the morning to 3:00 in the afternoon, and that she was then responsible for its operation as well as for the money incident to said business, and that it was necessary for her to take her meals at such place as would give her a continual supervision of the cigar stand, and further that part of her compensation consisted of a rebate of 40% of

the sale price of the food, that at the time of her injury she was an employee under contract for hire within the purview of §1465-61, and that her injury resulted from the work she was employed to perform, and received while engaged in the business of her employer and in the furtherance of the latter's affairs.

We have had occasion to examine many cases touching Workmen's Compensation, but we do not recall having come in contact with any pertinent case where such a defense is made. The cases are usually the reverse of this in that the Industrial Commission defends an action seeking to establish a claim by an injured workman, that such workman was not injured in the course of and as a result of the employment.

However, it can be readily understood that if this lady has a just claim which can be maintained against the Industrial Commission for her injuries, then she would have no right to recover from the defendant in this case, but must resort to the provisions of the statute covering workmen's compensation.

**Art. II, Sec. 35 of the Constitution** provides that for the purpose of providing compensation to workmen for death or injuries **occasioned in the course of such workmen's employment,** laws may be passed establishing a state fund.

"Such compensation shall be in lieu of all other rights to compensation or damages. And any employer who pays the premium or compensation provided by law * * * shall not be liable to respond in damages at common law or by statute * * * for such injury."

The issue then is, was the injury which the plaintiff suffered by reason of eating the sausage occasioned in the course of her employment?

"In order to recover compensation under the Workmen's compensation Law it is essential not only relation of employer and employee must exist, but the injured employee is also required

to show that his injuries resulted from the work he was employed to perform and that such injuries were received while engaged in the business of his employer and in the furtherance of the latter's affairs. * * * " **Industrial Commission of Ohio v Bateman, 126 Oh St 279, a p. 283.**

"Such injuries must be connected with the operation of the employer's business, * * * or the employee acting within the scope of his employment must at the time of his injury have been engaged in the promotion of his employer's business and in the furtherance of his affairs."

It must be shown that the injury was occasioned in the course of employment. Id.

The question which is made the burden of the brief of counsel is whether or not the injury is compensable as being within the constitutional and legislative definitions of compensable injuries.

We will not labor the question as to whether, if the injury suffered by the plaintiff was caused by the eating of the sausage, it is a compensable "injury". In our judgment the authorities amply sustain this position and have so recently been cited that we will not repeat them. We are cited to the case of **Industrial Commission v Cross, 104 Oh St 561,** as bearing upon this point, but we readily distinguish differences.

**Article II, Sec. 35,** as already pointed out contains the provision:

"For the purpose of providing compensation to workmen for **injuries occasioned in the course of such workmen's employment** laws may be passed", etc.

**Sec. 1465-72** provides that the board shall distribute the fund to employees "who have been injured in the course of their employment".

We will not give attention to or comment upon any case decided by any court other than those in Ohio, as we think Ohio cases are ample, and to cite other cases leads to unnecessary con-

fusion. We must keep the facts well in mind. The plaintiff was employed for a specific service. She had full authority to take her lunch anywhere she might desire. A certain concession was made to her by giving her a discount which led to more frequently lunching at the hotel than at other points. This also gave her an opportunity to watch the cigar stand, although she could and did call upon other employees to help her in this duty when she was not in direct attendance. It appears that she was alert and quick to go to the stand to accommodate the customers of her employer. This situation, we think, is covered by the ruling of the court in **Commission v Ahern, 119 Oh St 41,** where it is held that "no custom adopted by an employer will be permitted to place an employee in his employment, if no employment in fact existed at the time of the injury, or if such custom materially changed the ordinary and commonly accepted meaning of the phrase 'in course of employment'. 'In course of employment' connotes an injury sustained in the performance of some required duty done directly or incidental in the service of the employee. An employee who is injured when engaged not in the service of the employer but in pursuance of the employee's private or personal business, disconnected with the employment, is not entitled to compensation."

An early case was that of **Fassig v State, 95 Oh St 232,** decided in 1917. The 5th syllabus is to the effect that the provision of the Constitution and the statute with reference to an injury received in the course of employment refer only to the injury which is the result of or arises out of the employment. Such provisions do not cover any injury which has its cause outside of and disconnected with the employment, although the employee may at the time have been engaged in the work of his employer in the usual way. Johnson, J., delivering the opinion of the court, on page 247, states:

"It was plainly the intention of the framers of the amendment and of the statute, to provide for compensation only to one whose injury was the result of or connected with the employment, and would not cover any case which had its cause outside of and disconnected with the employment, although the employee may at the time have been actually engaged in and doing the work of his employer in the usual way."

In **Conrad v Youghiougheny & Ohio Coal Co., 107 Oh St 387,** the first syllabus is to the effect that the act does not apply to employees who may be injured after the termination of their daily employment nor when at the time of the injury the relationship of employer and employee has ceased to subsist. Citing **Commission v Weigandt, 101 Oh St 1,** and **Zilch v Bomgardner, 91 Oh St 205.**

**Industrial Commission v Nelson, 127 Oh St 41.** An injury is not compensable unless the employment has some causal connection with the injury either through its activities, its conditions or its environment, but whenever the conditions attached to the place of employment are factors in causing the injury, such injury arises out of the employment and is compensable.

**Graulty v Commission, 137 Oh St 341.** In a compensation case it is not error for the court to enter judgment for the defendant at the close of plaintiff's evidence if the facts established and every inference reasonably deducible therefrom construed most strongly in favor of the plaintiff do not tend to show that the employee received his injuries in the course of his employment.

**Industrial Commission of Ohio v Davidson, 118 Oh St 180:** An employee is in the course of his employment while he is performing the obligation of his contract of employment. An accident incident to or the result of an act done while in the course of his employment, **which act is appropriate** and helpful to the accomplishment of the purpose of his employment is a hazard of such employment This was quite an unusual case, but it must be admitted that the statement in the 3rd paragraph of

461the syllabus has a rather broad implication.

The case of **Industrial Commission of Ohio v Henry, 124 Oh St 616**, gives us some concern although we think it is clearly distinguishable. It is to the effect that where an employée, arriving at his place of employment at an early hour left the premises to get his breakfast at a restaurant in accordance with custom, and while returning to the premises by a necessary route was struck by a train running so immediately adjacent to the premises of the employer that the only way of ingress and egress toward the restaurant was one of hazard, the accident arose out of and in the course of decedent's employment. To make that case similar to the case at bar it would have to appear that the employee, having eaten at the restaurant, suffered injury from the food. That was not the situation. It was that he was in the course of his employment by reason of the proximity of the track to the place of his employment.

This Court has passed upon a number of these cases touching the question as to whether the injury arose during the course of employment.

One of these is **Frame v Industrial Commission, 30 Abs 362**, wherein the "going to or from work rule" is examined in view of the Ohio decisions, opinion by. Barnes, J.

The latest case decided by this Court is that of **Ryan v Industrial Commission**, 2nd District, Darke County, decided April 30, 1940, **34 Abs 181**; opinion by Geiger, PJ. It is there held that a charge that unless the jury find that the plaintiff at the time and place of her injury was in the performance of some required act done directly or indirectly in the service of her employer, the verdict must be for the Commission, is not error prejudicial to claimant. This case was one in which an employee, during a morning lull in the work in which forty employees were engaged, left the place of her employment, to go to a restaurant to obtain refreshments and during her egress from the building slipped upon an icy stairway and was injured. The Court held that this was in the pursuance of a private purpose wholly disconnected with the duties of her employment and she was not entitled to Workmen's Compensation. This case reviews many of the cases, some of which are borderline cases upon the question now engaging our attention and it would be an unprofitable expenditure of time to repeat the authorities there discussed. **Taylor v Industrial Commission, 13 Oh Ap 262**, is a case of interest and cited as of weight.

We are of the opinion that the plaintiff would not have been entitled to recover had she begun a proceeding against the Industrial Commission, for the reason that her accident did not arise out of her employment. The Court committed no error in refusing to charge as requested by the defendant to the effect that plaintiff had a right of action against the Industrial Commission and no right against the defendant.

This disposes of assignments 3, 4 and 7.

This leaves the single assignment to the effect that the Court erred in awarding interest from the date of the verdict rather than from the date of the judgment.

We are of the opinion that in this matter there was error, and that the interest should be computed from the day of judgment and not from the day of the verdict, and this is directed to be done.

With this exception the judgment of the Court below is affirmed.

HORNBECK and BARNES, JJ., concur.