Samuel Langley O'BAUGH, Appellant,

v.

**DRILLING WELL CONTROL, INC., Appellee.**

No. 51645.

Supreme Court of Oklahoma.

March 25, 1980.

King, Tague & Roberts, Oklahoma City, for appellant.

John T. Edwards, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellee.

OPALA, Justice:

The dispositive question on certiorari is whether the plaintiff [worker] in a negligent-tort action was barred by the Workers' Compensation Act from pursuing his common-law remedy. He was injured while employed by one of several contractors on a drilling job. After collecting compensation from his own employer he brought this action against another contractor at the well site. The defendant—an independent contractor—was hired to supervise the drilling of a deep gas well. The worker's employer—another contractor—was engaged to unplug shale from the same well. The two contractors were working, side by side, at the well site under separate contracts with the same operator who was their "principal employer" in the sense in which that term is used in 85 O.S.1971 § 11. They were doubtless cooperating in the common task of accomplishing a joint result for their principal employer.

At issue here is the worker's status vis-à-vis the defendant-contractor. If the latter entity fits the description of "another not in the same employ", as that phrase, used in 85 O.S.1971 § 44, is to be understood in conjunction with the terms of § 11, then the instant action will lie.[1] If not, the contractor would enjoy, under the provisions of 85 O.S.1971 §§ 12 and 44,[2] con-

---

1. All statutory citations are to the enactments in force when the worker was injured [October 14, 1970]; In-text citations are to 85 O.S.

2. In the resolution of the question at hand, consideration of 85 O.S.1971 §§ 11, 12 and 44 appears essential. All sections which follow refer to Title 85.

(a) § 11 contains a definition of "employer" couched in the broadest compensation-law sense as contrasted from the common law which generally requires privity of contract for the existence of an employer/employee relationship. In pertinent part § 11 provides: " * * * 1. The independent contractor shall, at all times, be liable for compensation due his direct employees, or the employees of any subcontractor of such independent contractor, and the *principal employer shall also be liable in the manner hereinafter specified for compensation due all direct employees, employees of the independent contractors, subcontractors, or other employees engaged in the general employer's business.*
"2. The person entitled to such compensation shall have the right to recover the same directly from his immediate employer, the independent contractor or intermediate contractor, and such claims may be presented against all such persons in one proceeding. If it appears in such proceeding that the principal employer has failed to require a compliance with the Workmen's Compensation Law of this State, by his or their inde-

pendent contractor, *then such employee may proceed against such principal employer without regard to liability of any independent, intermediate or other contractor.* Provided, however, in any proceeding where compensation is awarded against the principal employer under the provisions hereof, such award shall not preclude the principal employer from recovering the same, and all expense in connection with said proceeding from any independent contractor, intermediate contractor or subcontractor whose duty it was to provide security for the payment of such compensation, and such recovery may be had by supplemental proceedings in the cause before the State Industrial Commission or by an independent action in any court of competent jurisdiction to enforce liability of contracts. * * * " [emphasis supplied].
(b) § 12 effects an abrogation of employer's tort liability and of the employee's common-law action. It provides in pertinent part: "The liability prescribed [by the WCA] . . *shall be exclusive and in place of all other liability of the employer and any of his employees*, at common law or otherwise, for such injury, loss of services or death, to the employee, spouse, personal representative, parents, dependents, or any other person . . . * * * " [emphasis ours].
(c) § 44 provides us with a definition of a third-party tortfeasor which is couched in negative terms as "*another not in the same employ*". It provides in pertinent part:

strued together, absolute immunity from tort liability and the trial court's judgment must be reinstated.

Both contractors here were working in a cooperative manner on a common task—the unplugging of the well—and their cooperation in this joint endeavor was absolutely essential to attain their immediate goal. We hold that with respect to the common-task activities both contractors on the job and their workers must be deemed to be persons "in the same employ" as contemplated by the applicable provisions of the Act. Any common-law claim against them, if arising from a worker's on-the-job injury, stands abrogated. The worker must be relegated for redress to his exclusive statutory remedy in compensation.

Glover-Hefner-Kennedy, gas well operator [Operator] hired two contractors to assist it in the drilling of a deep gas well in Beckham County. Sharp Drilling Company [drilling contractor] supplied equipment and manpower, while Drilling Well Control, Inc. [DWC] provided a consultant to assist in the supervision of the operations. The consultant represented the Operator's interest at the well site and saw to it that the well was drilled according to specifications. The drilling contractor was paid at a daily rate for the use of the rig equipment and for the provisions of labor. The consultant shared this supervisory responsibility with the Operator's drilling superintendent. Both the consultant and superintendent were in daily contact with the Operator's engineer who made final decisions.

When the well was near completion high pressure caused production tubing to become clogged with formation shale at a point below the wellhead. This condition brought drilling to a halt. Otis Engineering [Otis] was called in to clean out "snub" shale from the production tubing. Otis provided its own snubbing equipment, a three-man crew and a supervisor. Before accepting the job assignment, Otis' representative went to survey the well site. He was advised the wellhead pressure was around 13,-000 pounds per foot. Although Otis-owned equipment, designed for wellhead pressure of not more than 10,000 pounds, was obviously underpowered, Otis' snubbing operator considered it adequate for deployment at the well if it were used with an adjustable rather than a positive choke.[3]

A decision was reached by the operator's drilling superintendent, engineering personnel and the consultant to use the 10,000-lbs. wellhead pressure snubbing unit [outfitted with a positive choke] instead of securing higher powered equipment from elsewhere. A well blowout followed. In its course Otis' snubbing operator [worker] was thrown 200 feet into the air and sustained multiple injuries. After receiving compensation benefits from his own employer in Louisiana, he brought a tort action against the consultant's employer, DWC. The trial court sustained DWC's demurrer to the evidence and this appeal was brought by worker. The Court of Appeals reversed. We granted certiorari to re-examine our past pronouncements' exposition of the applicable statutory law.

The Court of Appeals viewed as no longer efficacious this court's 1930 opinion in *Thompson v. Kiester*[4] and the construction accorded by it to the key phrase "another not in the same employ". In *Thompson*, an employee of a rig contractor was injured by an exploding boiler then in use by the drilling operator. We held that both contractors with all their workers on the job at the time of the injury were "in the same employ". We hence pronounced the drilling contractor statutorily immune from tort lia-

"If a workman entitled to compensation under this Act be injured by the negligence or wrong of *another not in the same employ*, such injured workman shall, before any suit or claim under this Act, elect whether to take compensation under this Act, or to pursue his remedy against such other. * * * " [emphasis supplied].

3. The adjustable choke was considered more desirable because in the event it becomes plugged, it can be cleaned out without shutting down snubbing operations. The choke in use was a positive choke without the manual or remote features of an adjustable one.

4. 141 Okl. 69, 283 P. 1018 [1930].

bility. The factors isolated by us in that case as helpful in the analysis of the "in-the-same-employ" status were: [a] both independent contractors on the job [b] at the time of the worker's injury [c] were in the process of performing a common task upon the work site (oil and gas lease) [d] in a cooperative manner [e] for the same party—the "principal employer" [f] who specified the work to be done and the manner of getting it done, [g] although each of these contractors had a separate contract with the "principal employer". All of these critical factors are clearly present here.

The Court of Appeals declined to follow the *Thompson* analysis. Instead, it rested its conclusion on our seemingly conflicting decisions in *Horwitz Iron & Metal Co. v. Myler*,[5] *Londagin v. McDuff*,[6] *Parkhill Truck Co. v. Wilson*,[7] *Dolese Brothers v. Tollett*[8] and *Rota-Cone Oil Field Operating Co. v. Chamness*.[9] These cases were believed to cast a serious shadow over Thompson's continued efficacy as a viable precedent for the notion that § 44 "in-the-same-employ" class may include employees of several independent contractors working on the same project for the accomplishment of a common task under separate contractual engagements with the same person as the "principal employer".

The cited decisions, which no doubt influenced the Court of Appeals in its course, were anchored upon facts clearly distinguishable from those in the instant case. *Horwitz, Londagin, Parkhill* and *Dolese* all involved negligent activities by materialmen or truckers while in the process of delivering goods to, or loading them at, a job site. Their peculiar status, we held in

those cases, qualified them under 85 O.S. 1971 § 44 as "another not in the same employ". *Rota-Cone*, as well as the instant case, was a claim by an employee of an independent contractor against another such contractor both of whom, at the time of the injury, were engaged in performing tasks for the same entity.

*Rota-Cone* acknowledges the existence of two case-law tests. The first of these, first announced in *Thompson*, rests on an analysis of the elements described earlier in this opinion. The second depends on whether the defendant in a common-law action may be said to be either primarily or secondarily liable to the plaintiff-worker under the Workers' Compensation Act. *Rota-Cone* attributes the first test to the *Thompson* decision and the second to *Dolese*. It concludes that the two tests, though seemingly incompatible, are neither mutually exclusive nor contradictory. We are impressed with *Rota-Cone's* approach that allows both the *Thompson* and *Dolese* tests to co-exist for accommodation of a great variety of factual situations which may arise in determining the status of a defendant as a third-party tortfeasor.

■ The person immune from common-law tort liability is not necessarily one who has either primary or secondary liability to the worker-plaintiff under the compensation law. This is apparent from our case-law which clearly affords immunity to co-employees who can never bear either primary or secondary liability for compensation. The "in-the-same-employ" status under § 44, as shown by *Thompson*, is not necessarily dependent on the existence of secondary liability under § 11.[10] This is further demonstrated by our decision in

---

**5.** 207 Okl. 691, 252 P.2d 475 [1952].

**6.** 207 Okl. 594, 251 P.2d 496 [1952].

**7.** 190 Okl. 473, 125 P.2d 203 [1942].

**8.** 162 Okl. 158, 19 P.2d 570 [1933].

**9.** 197 Okl. 103, 168 P.2d 1007 [1946].

**10.** In *Thompson*, supra note 4, at page 1022, the court said:
   "We think, under the facts such as are here presented, that the plaintiff and defendants

were in the same employ, as the term is used in the Compensation Act, and that the Legislature intended as we think it had a right to do, that a person employed under such circumstances should seek his remedy before the Industrial Commission only. * * * We do not think that the term 'in the same employ,' as used in the Compensation Act, *was so limited that both parties must be hired and working directly under the same person.* If they are engaged in the same general business, as shown by the facts here,

*Carroll v. District Court of Fifteenth Judicial District* [11] in which § 12 immunity was extended to a co-employee—one who could never be within the sphere of secondary liability of § 11.

■ The tort immunity created by our compensation law is a conceptual complexity not capable of being reduced to one theory or formula or of being judicially applied under a single, all-inclusive test. Extant case law identifies several classes of persons who may not be made answerable in damages for the on-the-job injury or death of a worker protected by the statutory remedy in compensation. These classes are: [12]

[a] the worker's immediate employer; [13]

[b] all of the worker's co-employees under the immediate employer; [14]

[c] the "immediate, intermediate and principal" hirers of the immediate employer, together with their employees, because under § 11 these entities are secondarily answerable in compensation for injury or death occurring in activities that are a necessary and integral part of the hirer's business; [15]

[d] independent contractors and their employees for acts or omissions in performing joint tasks under a contract with the same "principal employer". [16]

In the drilling of a well a contractor encounters different stages of production—some of which may cause temporary setbacks in achieving the ultimate goal of sinking the well. The unplugging of a well that has become clogged with debris is but one such stage in the necessary progression of work to the well's completion.

The consultant in the instant case, hired to supervise the drilling operation, encountered an obstacle in reaching his goal when production tubing came to be filled with shale. A company experienced in unplugging wells was called in for assistance by the general contractor. Both the drilling consultant and the snubbing operator worked on the common task of unplugging the well in a joint, cooperative endeavor. During this operation the snubbing operator supplied the equipment and manpower while the drilling consultant provided supervision and coordination of the drilling crew. [17] The consultant, along with the operator's drilling superintendent and engineering staff, chose the equipment as safe for the intended use. Joint efforts of the drilling consultant and snubbing operator were required to complete the task of unplugging the well.

■ As contrasted from *Rota-Cone*, we do not have here contractors who, though engaged by the same entity, may be said to have been doing clearly separate and distinct tasks. Nor is the relationship to be dealt with here that of materialman/buyer

and for the *same general employers, they are in the same employ as intended by the act."* [emphasis supplied].

11. Okl., 579 P.2d 828 [1978].

12. · 85 O.S.1971 §§ 44 & 122; until recently one of the classes included physicians, as well as other practitioners of the healing art and of health-related services. *German v. Chemray, Inc.*, Okl., 564 P.2d 636 [1977].

13. 85 O.S.1971 § 12; *Harter Concrete Products, Inc. v. Harris*, Okl., 592 P.2d 526 [1979].

14. 85 O.S.1971 §§ 44 & 122; *Carroll v. District Court of Fifteenth Judicial District*, supra note ·11.

15. *W. P. Atkinson Enterprises, Inc. v. District Court of Oklahoma County*, Okl., 516 P.2d 541

[1973]; *Crowder v. Continental Materials Co.*, Okl., 590 P.2d 201 [1979].

16. *Thompson v. Kiester*, supra note 4. *Thompson's* rationale appears to rest on the common-law loaned-servant doctrine adapted to fit § 11 status relations. *Ishmael v. Henderson*, Okl., 286 P.2d 265, 267–268 [1955]. *Ishmael* explains that under this doctrine either the general (lending) or the special (borrowing) master, or both, could be looked to by the worker for payment of compensation.

17. During the cleanup process, the snubbing crew operates their specialized equipment and the drilling crew handles the pipe that is being used. When it becomes necessary, the snubbing operator secures the assistance of the drilling crew.

or shipper/carrier. The contractors in this case were performing a common task for the same principal employer. They are thus all immune—themselves as well as their employees—from common-law tort liability for job-related injuries occasioned to any employee at the work site.

Court of Appeals opinion vacated and trial court's judgment reinstated.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS and HARGRAVE, JJ., concur.