George WEBER and Sharon Weber, Appellants,

v.

ARMCO, INC., an Ohio corporation, d/b/a National Wellhead Supply Company, Appellee,

and

Liberty Mutual Insurance, Intervenor.

No. 59314.

Supreme Court of Oklahoma.

May 10, 1983.

John M. Merritt, Inc. by John M. Merritt, Oklahoma City, for appellants.

Looney, Nichols, Johnson & Hayes by Burton J. Johnson, and John B. Nicks, Oklahoma City, for appellee.

HODGES, Justice.

George Weber (Weber) was an employee of Well-Tech Drilling Company (Well-Tech), a contractor hired by J.M. Huber Oil Company (Huber Oil) to drill and complete a well. Huber Oil also hired National Wellhead Supply Company, a division of Armco (Armco), to install a wellhead which Armco had manufactured. Weber assisted an Armco employee with the installation, and on January 10, 1979, while the workers were attempting to remove a back pressure valve installed below the wellhead, a piece of ice was ejected from the wellhead which struck and injured Weber.

After receiving workers' compensation benefits from Well-Tech, Weber and his wife, Sharon, brought an action in federal district court against Armco as a third party tortfeasor, alleging negligence and products liability claims, and seeking compensa-

tory and punitive damages. The products liability claim was based on faulty design and the presence of ice in the wellhead. The Webers also asserted that the back pressure valve, manufactured and supplied by Armco, was defective. The trial court held, as a matter of law, that Armco was immune from suit and granted Armco's motion for summary judgment. The Tenth Circuit certified two questions based on its belief that whether the Webers can assert a products liability claim against Armco depends on recognition of the dual-capacity doctrine by this Court.

## I

The Webers contend that Armco acted in a dual-capacity because it occupied the two-fold position of employer and manufacturer and, therefore, it can be sued in tort. We do not agree.

Workers' compensation is a mutual compromise in which the employee relinquishes his/her right to sue for damages sustained in job-related injuries; and the employer accepts no-fault liability for a statutorily prescribed measure of damages.[1] This trade-off has the net effect of imposing a form of strict liability upon the employer to pay for industrial accidents. As a result, workers' compensation is the exclusive damage remedy for the injured employee; and the employer is given immunity from common-law tort liability.[2]

The Oklahoma Workers' Compensation Act does not prohibit an injured employee from maintaining a common-law action against a negligent third person, not in the same employ as the injured worker, even if the injury occurs during the course

1. Mary Quella Kelly, "Workmen's Compensation and Employer Suability: The Dual-Capacity Doctrine," 5 St. Mary's L.J. 818 (1974).

2. See 85 O.S.Supp.1982 § 12 which defines the extent of liability and immunity under the Workers' Compensation Act. This section was amended on March 26, 1982, to allow an em-

ployee to sue another employer, or its employees, on the same job as the injured or deceased worker, where the other employer does not stand in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker.

of employment.[3] This kind of third-party liability provision has prompted much discussion in the law as to whether an employer could ever be sued as a third-party tortfeasor.[4] According to the dual-capacity doctrine, an employer who is generally immune from tort liability may become liable to his employee as a third-party tortfeasor; if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as an employer.[5] It is the second capacity which imposes tort liability on the employer for creating duties to his employees which are independent from the employment relationship.[6]

This concept of duality, which confers third-party status upon the employer, is more meaningful when viewed in terms of an employer having a dual persona. An employer may become a third person if he possesses a second persona so completely independent from and unrelated to his status as an employer, that by established standards, the law recognizes it as a sepa-rate legal person.[7] The determinative issue is one of identity, not of activity or relationship. Duality may be created by statute, e.g., a one-man corporation [the corporation is a separate legal person because the statute so decrees]; or it may be recognized by long-established precedent in common-law or equity such as the status of a trustee or guardian.[8] The term dual persona provides legal clarity because it focuses upon the identity of the employer and not upon activity or relationship. A single legal person may be said to have many capacities, as the term capacity has no fixed legal meaning. As a result, few courts have extended the dual-capacity doctrine far enough to destroy employer immunity when only a separate relationship or theory of liability existed.[9]

The majority of jurisdictions have refused to apply the dual-capacity doctrine under a products liability theory, when the employer manufactures, modifies, distributes or installs a product used in the employee's work.[10] Application of the dual-ca-

---

**3.** 85 O.S.1981 § 44 provides in part:

"(a) If a workman entitled to compensation under this Act be injured by the negligence or wrong of another not in the same employ, such injured workman shall, before any suit or claim under this Act, elect whether to take compensation under this Act, or to pursue his remedy against such other."

**4.** See 2A Larson's, "Workmen's Compensation Law," p. 14–229 § 72.81 (1982). See also Mary Quella Kelly, "Workmen's Compensation and Employer Suability: The Dual-Capacity Doctrine," 5 St. Mary's L.J. 821 (1974); Note, "Dual-Capacity Doctrine: Third-Party Liability of Employer-Manufacturer in Products Liability Litigation," 12 Ind.L.Rev. 561 (1979).

**5.** Mary Quella Kelly, "Workmen's Compensation and Employer Suability: The Dual-Capacity Doctrine," 5 St. Mary's L.J. 821 (1974); See also 2A Larson's, "Workmen's Compensation Law," p. 14–112 § 72.80 (1976).

**6.** Cited examples of an employer in a dual capacity include: an employer who also manufactures products for use in his employee's work, *Mercer v. Uniroyal, Inc.,* 49 Ohio App.2d 279, 361 N.E.2d 492 (1977); a landowner employing persons to work on his property, *Marcus v.*

*Green,* 13 Ill.App.3d 699, 300 N.E.2d 512 (1973); a shipowner employing stevedores, *Reed v. Steamship Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); and a chiropractor treating his own employee's work-related injuries, *Duprey v. Shane,* 39 Cal.2d 781, 249 P.2d 8 (1952).

**7.** See 2A Larson's, "Workmen's Compensation Law," p. 14–229 § 72.81 (1982), where the author reasons that the term dual persona should replace dual capacity to correct the looseness and over-extension attending the dual-capacity doctrine.

**8.** *Billy v. Consolidated Mach. Tool Corp.,* 51 N.Y.2d 152, 412 N.E.2d 934, 939, 432 N.Y.S.2d 879, 884 (1980).

**9.** Id.

**10.** See 2A Larson's, "Workmen's Compensation Law," P. 14–239 § 72.83 (1982) for cited cases. See also Annot., "Workers' Compensation Act As Furnishing Exclusive Remedy For Employee Injured By Product Manufactured, Sold Or Distributed By Employer," 9 A.L.R. 4th 873 (1981).

pacity doctrine requires that the second persona of the employer be completely independent from his obligations as an employer. If the employer is also the manufacturer of the product which caused the employee's injury, the two personas of manufacturer and employer are interrelated. An employer has a duty to provide a safe workplace for his employees.[11] If an employer provides an employee with a defective machine or tool to use in his work, he has breached his duty as a manufacturer to make safe machinery, and his duty as an employer to provide a safe working environment. Yet, the two duties are so inextricably wound that they cannot be logically separated into two distinct legal personas.[12]

The minority view in products liability cases involving an employer-manufacturer, has been to apply the dual-capacity doctrine whenever the product is sold to the public as well as furnished to the employee.[13] Placing this limitation upon use of the doctrine cannot justify its use in products liability cases. The important fact is that, as to the employee, the product was manufactured as an adjunct of the business and

furnished to him solely as an employee, not as a member of the consuming public. This fact is a determinative aspect of the employer-employee relationship and cannot be changed regardless of what the employer does with the rest of his output.[14]

We reject application of the dual-capacity doctrine to impose liability upon an employer-manufacturer. The employer has a duty arising out of the employment relationship to furnish safe equipment to its employees; and that duty arises whether the equipment is purchased or manufactured by the employer, either in connection with producing the same item for public consumption or otherwise.[15]

There are circumstances in which application of the dual-capacity doctrine is appropriate.[16] The doctrine should not be used when it would serve only to evade the exclusivity provision of the Oklahoma Workers' Compensation Act. The doctrine requires a strict and limited application to avoid imposing liability in every instance upon a defendant-employer. The decisive dual-capacity test is not concerned with how separate or different the second func-

---

11. *Billy v. Consolidated Mach. Tool Corp.,* note 8, supra.

12. Id.

13. *Douglas v. E & J Gallo Winery,* 69 Cal. App.3d 103, 137 Cal.Rptr. 797 (1977); *Mercer v. Uniroyal, Inc.,* 49 Ohio App.2d 279, 361 N.E.2d 492 (1977).

14. 2A Larson's, "Workmen's Compensation Law," p. 14–246 & 82.84 (1982).

15. *Winkler v. Hyster Co.,* 54 Ill.App.3d 282, 12 Ill.Dec. 109, 369 N.E.2d 606, 609 (4th Dist. 1977). Note that our basis for rejection is the precise holding of the *Winkler* case. We adopt the reasoning of the Illinois court, although *Winkler* does not have precedential effect in this jurisdiction.

Some credence should also be given to the argument that any change in compensation law which would permit a covered employee to institute litigation against his employer, to recover for an injury clearly covered by the Workers' Compensation Act, is a public policy decision for the Legislature. *Longever v. Revere Cooper and Brass Incorporated,* 408 N.E.2d 860 (Mass.1980).

16. See *Duprey v. Shane,* 39 Cal.2d 781, 249 P.2d 8 (1952) where a chiropractor elected to treat his own employee's work-related injuries. The employer-physician aggravated the injuries and was held liable to his employee in a subsequent malpractice action. *Duprey* recognizes that the exclusive remedy provision should be adhered to only if the policy considerations supporting the workmen's compensation scheme are invoked by the facts of a particular case. If adherence to the provision works an inequity and deprives a workman of a tort action solely on the basis of the coincidence of the employment relationship, then the exclusive remedy no longer facilitates the scheme of compensation law and mere legal adherence is unjustified. Note, "Dual-Capacity Doctrine: Third-Party Liability of Employer-Manufacturer in Products Liability Litigation," 12 Ind.L. Rev. 567 (1979). Although *Duprey* was decided in a jurisdiction which represents the minority view, it is the best example in the law of a proper application of the dual-capacity doctrine.

tion of the employer is from the first, but whether the second function generates obligations unrelated to those flowing from that of employer.[17] This means that the employer must step outside the boundaries of the employer-employee relationship, creating separate and distinct duties to the employee; the fact of injury must be incidental to the employment relationship.[18]

The trial court was correct in granting summary judgment for Armco. In *O'Baugh v. Drilling Well Control, Inc.,* 609 P.2d 355 (Okl.1980), this Court held that if subcontractors of the same hirer work in a cooperative manner on a common task, with overlapping contractual responsibilities, and their joint endeavor is essential to attain the immediate goal, the exclusive remedy is under the Workers' Compensation Act. The facts in this case are indistinguishable from *O'Baugh.* In this instance, Huber Oil was the hirer, Well-Tech and Armco were hired as subcontractors; and Weber was assisting an employee of Armco in installation of the wellhead when the injury occurred.

 In *Newport v. Crane Service, Inc.,* 649 P.2d 765, 769 (Okl.1982), we acknowledged that the *O'Baugh* doctrine had been abrogated by the amendment of 85 O.S.Supp.1982 § 12.[19] However, Weber cannot avail himself of the statute. In the absence of express or implied legislative intent to the contrary, an amendment to the Workers' Compensation Act is inapplicable to injuries sustained prior to its enactment.[20] The right to receive and the obligation to pay compensation under Workers' Compensation Law are vested under the provisions of the law which exist at the time of the injury. *O'Baugh* was the prevailing interpretation of Oklahoma law at the time Weber's injury occurred. Pursuant to the Okla.Const. art. 5, § 52, after a suit has been commenced, the legislature cannot destroy any existing defenses.[21] Armco was immune from a tort action by Weber because the injury occurred before the effective date of the amendment to § 12, March 26, 1982.

## II

 The question of whether punitive damages may be awarded in an action for products liability was recently answered by this Court. In *Thirty v. Armstrong World Industries* (March 22, 1983), 661 P.2d 515 (Okl.1983), we said:

> ceased worker nor stands in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker."

**17.** See *Rosales v. Verson Allsteel Press Co.,* 41 Ill.App.3d 787, 354 N.E.2d 553 (1976); see also 2A Larson, "Workmen's Compensation Law," p. 226.23 § 72.80 (1982).

**18.** *Neal v. Roura Iron Works, Inc.,* 66 Mich. App. 273, 238 N.W.2d 840 (1975).

**19.** The pertinent part of 85 O.S.Supp.1982 § 12 provides:
... "(i) that the immunity created hereby shall not extend to action by an employee, spouse, personal representative, parents, dependents or any other person against another employer, or its employees, on the same job as the injured or deceased worker where such other employer does not stand in the position of an intermediate or principal worker;" ...
... "(ii) that such immunity created hereby shall not extend to action against another employer, or its employees, on the same job as the injured or deceased worker even though such other employer may be considered as standing in the position of a special master of a loaned servant where such special master neither is the immediate employer of the injured or de-

**20.** *Apple v. State Ins. Fund,* 540 P.2d 545 (Okl. 1975); *Special Indem. Fund v. Michaud,* 345 P.2d 891, 893 (1959); *General Electric Co. v. Folsom,* 332 P.2d 950, 953 (Okl.1958); *Swatek Const. Co. v. Williams,* 177 Okl. 350, 58 P.2d 585, 587 (1936); *Washabaugh v. Bartlett Collins Glass Co.,* 177 Okl. 159, 57 P.2d 1162, 1164 (1936).

**21.** The Okla. Const. art. 5, § 52 provides:
"The Legislature shall have no power to revive any right of remedy which may have become barred by lapse of time, or by any statute of this State. After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."

"Punitive damages may be assessed against the manufacturer of a product injuring the plaintiff if the injury is attributable to conduct that reflects *reckless disregard* for the public safety. 'Reckless disregard' is not to be confused with inadvertent conduct. To meet this standard the manufacturer must either be aware of, or culpably indifferent to, an unnecessary risk of injury. Awareness should be imputed to a company to the extent that its employee[s] possess such information. Knowing of this risk, the manufacturer must also fail to determine the gravity of the danger or fail to reduce the risk to an acceptable minimal level. 'Disregard for the public safety' reflects a basic disrespect for the interests of others.

"The following factors will aid the factfinder in determining whether the conduct of the manufacturer meets the required standard of 'reckless disregard for the public safety:'

"A manufacturer's fault in failing to deal with a product defect increases with the gravity of the resulting risk of harm to the public. As the costs of correcting or reducing the danger decrease, so does the credibility of excuses for failing to do so. As the manufacturer's awareness of the existence and gravity of the product defect increases, so does its duty to correct the problem and its culpability for failing to do so. The time lapse in responding to a product defect, its reasons for not acting further, and the nature of steps actually taken to correct the defect shed light on the manufacturer's values of profits over safety, and therefore its culpability. If the manufacturer deliberately deceived the public about its product's safety, it will usually be especially blameworthy and deserving of punishment."

WE, THEREFORE, FIND:

1. After the amendment of 85 O.S.Supp. 1982, § 12, which defines the extent of liability and immunity under the Workers' Compensation Act, an employee who is injured by a defective product manufactured by "another person" engaged in performance of a common task may assert a manufacturer's products liability claim against the other person as the manufacturer of the product. An employee may not assert such a claim before March 26, 1982, the effective date of the amendment.

2. Punitive damages may be assessed against the manufacturer of a product which injures the employee if the injury is attributable to conduct which reflects reckless disregard for public safety.

QUESTIONS ANSWERED.

SIMMS, V.C.J., and LAVENDER, DOOLIN, OPALA, WILSON, JJ., concur.

BARNES, C.J., and IRWIN, J., concur in Part I, dissent in Part II.