Timothy KNOWLTON, Appellant,

v.

TRANTER, INC., a corporation, and Jerry Ryan, Appellees.

No. 59542.

Court of Appeals of Oklahoma, Division No. 2.

Nov. 1, 1983.

Released for Publication by Order of Court of Appeals Nov. 29, 1983.

Gary A. Eaton, Briggs, Patterson, Eaton & Berg, Tulsa, for appellant.

S.M. Fallis, Jr., Nichols & Wolfe, Inc., Tulsa, for appellees.

BOYDSTON, Judge.

Plaintiff Timothy Knowlton brought suit against Defendants Tranter, Inc., and Jerry Ryan, claiming damages for personal injury caused by negligent and defective machine

design. Trial court sustained Defendants' demurrer for: (1) lack of jurisdiction of this matter as one within the Workers' Compensation Act, and (2) Plaintiff's failure to state a cause of action in view of prior compensation court adjudication of the claim. Plaintiff excepted to the ruling and brought this appeal. Based on our review of the record and applicable law, we affirm the judgment as to Defendant Tranter, but reverse as to Defendant Ryan.

Plaintiff alleges in his second amended petition that on November 9, 1979, he was working for Kentube, a division of Defendant Tranter, when his clothing was caught in the unguarded, high speed, moving parts of the Fintube machine. He was repeatedly slammed against the machine and the floor and suffered serious bodily injuries as a result. Plaintiff alleged the incident was proximately caused by the negligent and defective "design, manufacture, fabrication, assembly and/or installation of the fin-tube machine."

Plaintiff further alleges the machine was originally designed a number of years before the injury occurred by Ken Anderson, now deceased, and was subsequently modified by Defendant Jerry Ryan. Several years prior to the injury Ken Anderson and Defendant Jerry Ryan, d/b/a Kentube, sold their interests in the business to Defendant Tranter. Defendant Jerry Ryan then became an employee of Defendant Tranter, the alleged successor in interest to Ken Anderson and Defendant Ryan, d/b/a Kentube, by virtue of having acquired all their interest in and to that business.

Plaintiff's workers' compensation claim has been previously adjudicated.

Plaintiff raises two issues on appeal: (1) may a plaintiff sue his employer as the successor in interest corporation to the designing corporation of an alleged defective product under manufacturers' products liability tort theories or is his exclusive remedy within the compensation act, and (2) does the Workers' Compensation Act prohibit one employee from suing a fellow employee in tort when the tortious acts of the co-employee occurred prior to the par-

ties' obtaining the status of "co-employees," but when the resulting injury occurred when the parties were working for a common employer.

## I

Plaintiff attempts to hold his employer, Tranter, liable under tort theories as well as under the compensation act—an attempt to invoke "dual capacity" liability.

The Oklahoma Supreme Court has recently specifically rejected the "dual-capacity" doctrine in *Weber v. Armco, Inc.*, Okl., 663 P.2d 1221, 1226 (1983), wherein the court stated:

> We reject application of the dual-capacity doctrine to impose liability upon an employer-manufacturer. · The employer has a duty arising out of the employment relationship to furnish safe equipment to its employees; and that duty arises whether the equipment is purchased or manufactured by the employer, either in connection with producing the same item for public consumption or otherwise. (Footnote omitted.)

The court cited 85 O.S.1981 § 12 (1982 amendment not applicable), which states:

> The liability prescribed ... shall be exclusive and in place of all other liability of the employer and any of his employees, at common law or otherwise, for such injury ... to the employee ....

Plaintiff attempts to circumvent the legislative language by arguing that Tranter is not being sued for its own negligent acts, but for the acts of the predecessor company it acquired—Kentube. Plaintiff argues Tranter assumed all liabilities of Kentube as part of the acquisition.

Although a minority of jurisdictions support the right of a worker to sue a successor corporation under products liability theories when he is injured because of the defective design of a *product manufactured and sold or distributed to the public* by the predecessor corporation, the majority view does not recognize this "public sale" exception.

The great majority of American jurisdictions hold that an employer, who is

also the manufacturer, modifier, installer, or distributor of a product used in the work, cannot be held liable in damages to his own employee on a theory of products liability. 2A A. Larson, The Law of Workmen's Compensation § 72.83 (1978).

The facts of this case are that the machine at issue was not made for public distribution. In addition, the *Weber* court specifically rejected the public sale distinction with its language "for public consumption or otherwise." *Weber v. Armco, Inc.,* 663 P.2d at 1226.

Plaintiff is thus limited to the workers' compensation remedy as against Defendant Tranter.

The right of action to recover damages for personal injuries or death arising and occurring in employment as herein defined, except the right of action reserved to an injured employee or his dependents or other legal representatives in Sections 12 and 44 of this title is hereby abrogated and all jurisdiction of the courts of this state over such causes, except as to the cause reserved to such injured employees or their dependents or other legal representatives in Sections 12 and 44 of this title is hereby abolished. 85 O.S.1981 § 122.

## II

■ The second issue before us is whether Jerry Ryan, designer/modifier of an alleged defective machine, is to escape liability for his tortious act merely because at the time his pre-employment acts finally produced injury, he held the status of "co-employee" as to the injured worker under the Workers' Compensation Act. This is a matter of first impression in Oklahoma, and we decline to clothe Ryan with the legislative immunity under these facts.

In some states, unlike Oklahoma, the workers' compensation statutes are written such that an employer is immune from suit other than under the provisions of the act, but suits by a worker against "third parties" are allowed. This wording, not specifically exempting "co-employees," has allowed some suits by an injured worker against a co-employee where a court was willing to interpret "third party" to include co-employees.

Our interest in this approach exists only as to the underlying policy rationale behind the rulings because Oklahoma's statutory language in 85 O.S.1981 § 12, specifically exempts "the employer and any of his *employees*." One such policy rationale is that an employee, unlike an employer, makes no contribution to reimburse an injured fellow employee, so he should not escape the consequences of his acts.

■ A distinction must be made and an exception must be granted to the broad umbrella of immunity under the compensation act when the tortious act complained of is independent of and not related to the common employment of the parties involved. Ryan's design was allegedly completed long before he became a co-employee of Plaintiff and long before the design produced an injury. Although the actual injury occurred on the employer's premises in the course of employment, we find the alleged independent wrongful conduct of Ryan giving rise to his potential liability had no relationship to that common employment. See *Ventrone v. Tarancki,* 32 A.D.2d 738, 302 N.Y.S.2d 108 (1969).

In another New York case, *Maines v. Cronomer Valley Fire Dept., Inc.,* 50 N.Y.2d 535, 407 N.E.2d 466, 429 N.Y.S.2d 622 (1980), a volunteer fireman, who recovered compensation benefits, was also allowed to sue a fellow fireman for injuries sustained when he was injured by the co-fireman who "hazed" him after a regular monthly meeting at which the plaintiff was inducted as senior member of the fire department. Defendants threw plaintiff into a dumpster causing severe injuries. The New York statutes provided that compensation is the exclusive remedy of an employee injured "by the negligence or wrong of another in the same employ."

The New York court said that the words "in the same employ" were not satisfied merely because both plaintiff and defendant had the same employer. The defend-

ant, to have statutory protection, must "himself have been acting within the scope of his employment and not have been engaged in a willful or intentional tort."

We find nothing in our statutes to exempt Ryan's strict liability for defective design when the tortious act, as distinguished from the resulting injury, occurred outside employment. Our statute, 85 O.S. 1981 § 122, abolishes "the right of action to recover damages for personal injuries ... *arising and occurring [only] in employment.*"

We AFFIRM the sustention of demurrer as to Tranter, but REVERSE as to Jerry Ryan and REMAND to trial court for further proceedings consistent with this opinion.

BACON, P.J., concurs.

MEANS, J., concurs specially.

MEANS, Judge, specially concurring.

I concur in affirming the sustention of the demurrer as to Tranter, as stated in the majority opinion. In *Weber v. Armco, Inc.,* Okl., 663 P.2d 1221 (1983), the Oklahoma Supreme Court specifically rejected the "dual-capacity" doctrine in Oklahoma.

Regarding the demurrer of the defendant Jerry Ryan, I also concur that the ruling on Ryan's demurrer was improperly sustained, but for reasons different from those stated by the majority.

Plaintiff's Second Amended Petition alleged in pertinent part as follows:

II

On or about November 9, 1979, the Plaintiff was working at his job with Kentube, in Tulsa, Oklahoma. The Plaintiff was operating a fin-tube machine when his clothing was caught upon certain unguarded, high speed, moving parts of the machine, and he was repeatedly and violently jerked, thrown, and slammed against parts of the fin-tube machine and the floor at a very high rate of speed before a co-worker could stop the machine. The Plaintiff sustained many and various bodily injuries as a result of this incident which will be set forth in detail hereinafter.

III

The aforementioned incident and the injuries sustained therein by the Plaintiff were proximately caused by the defective and negligent design, manufacture, fabrication, assembly and/or installation of the fin-tube machine, with its various component parts in that it required an operator to be exposed to the aforementioned, unguarded, high speed, moving parts. Emerson Electric, a corporation, was the manufacturer and seller of certain component control parts, the operation of which brought the Plaintiff into close proximity with the aforementioned unguarded, high speed, moving parts and exposed him to unreasonable risks of bodily injury.

IV

The fin-tube machine in question was designed by Ken Anderson, d/b/a Kentube, a number of years before the above described incident. Modifications and changes in the design of the fin-tube machine were subsequently made by Jerry Ryan. Several years prior to the above described incident, Ken Anderson and Jerry Ryan sold the entirety of their interests in the fin-tube business known as Kentube to Tranter, Inc. Jerry Ryan became an employee of Tranter, Inc., at that time and Ken Anderson subsequently died. Tranter, Inc., a corporation, is the successor in interest to Ken Anderson and Jerry Ryan, both d/b/a Kentube, by virtue of having acquired all their interests in and to the fintube business they started and developed including physical assets such as land, buildings, machines, materials, inventory and intellectual property such as fintube machine designs.

V

The high speed rotating action of the fin-tube machine repeatedly slamming

the Plaintiff against the concrete floor caused the following injuries:

a. Compound fracture of the right femur;

b. Dislocation of the right index finger;

c. Depression fracture of left sinus;

d. Various soft tissue injuries, including but not limited to the right and left knees, the right Achilles tendon, facial cuts and abrasions, sprains and strains of the cervical, thoracic and lumbar spine.

Defendants Ryan and Tranter demurred to the Second Amended Petition on the grounds and for the reasons that:

1. The Court has no jurisdiction of the subject of the action in that the district courts are without jurisdiction in matters within the Workmen's Compensation Act pursuant to OKLA.STAT. tit. 85, § 122.

2. The Second Amended Petition does not states [sic] facts sufficient to constitute a cause of action in that the Second Amended Petition on its face affirmatively shows adjudication of the alleged claim properly under the Workmen's Compensation Act, OKLA.STAT. tit. 85, §§ 12 and 122.

The critical issue in this case is the relationship of the plaintiff and the defendant Ryan at the time of the alleged tortious acts. If they were co-employees, then 85 O.S.1981 § 12, prevails and the district court does not have jurisdiction over a Workers' Compensation Act proceeding. Section 12 provides in part:

The liability prescribed ... shall be exclusive and in place of all other liability of the employer and any of his employees, at common law or otherwise, for such injury ... to the employee ....

In *Keel v. Titan Construction Corp.*, Okl., 639 P.2d 1228, 1229–30 (1981), the supreme court said:

For the purpose of testing the sufficiency of a petition to withstand a demurrer, a demurrer admits the truth of all facts well pleaded together with all inferences which may be legally drawn therefrom. On appeal from an order sustaining a demurrer, the petition must be liberally construed and all of its allegations of fact must be taken as true, together with all reasonable inferences therefrom. (Footnotes omitted.)

A reading of the Second Amended Petition does not provide information as to when the critical events took place. Did the modifications and changes in the fintube machine attributed to Ryan take place while he was an employee of Kentube, or later when he was an employee of Tranter? Was Ryan ever an employee of Kentube or was his status always that of co-owner? Not knowing what Ryan's status was at the time the critical events took place precludes a determination that he and the plaintiff were or were not co-employees at the time any tortious acts occurred and precludes sustaining a demurrer on that ground.

I would reserve resolution of the first impression substantive aspects raised by the parties until such time as these issues are raised, argued, and resolved by the trial court following complete discovery.