MERCER ET AL., APPELLANTS, *v.* UNIROYAL, INC., APPELLEE.

(No. OT-75-13—Decided April 30, 1976.)

*Messrs. Murray & Murray,* for appellants.
*Messrs. Eastman, Stichter, Smith & Bergman* and *Mr. James F. Nooney,* for appellee.

POTTER, J. Plaintiffs Robert Mercer and his wife Ann appeal from a summary judgment rendered in favor of

Uniroyal, Inc., dismissing Uniroyal as a party defendant. Simultaneous with this summary judgment, the trial court rendered a summary judgment in favor of defendant American Stevedoring Corporation, and no appeal was taken by plaintiffs from this judgment. Plaintiff Ann Mercer's claim is for a loss of consortium arising from her husband's injuries.

Robert Mercer (hereinafter designated as plaintiff) was an employee of American Stevedoring Corporation and worked as a truck driver. On June 27, 1973, he was riding in a truck leased by Uniroyal from Avis Truck Rental. He was resting in the sleeping compartment of the cab while his co-employee, John Walker, was driving. The truck was on a hauling trip for Uniroyal. The left front tire blew out resulting in a collision and injuries to plaintiff.

There was a lease agreement between American Stevedoring Corporation and Uniroyal whereby American Stevedoring Corporation furnished its employee, plaintiff, to Uniroyal. Uniroyal had control of the truck drivers, including plaintiff, in all phases of the operation of the trucks. Under the agreement, American Stevedoring Corporation paid the wages of plaintiff, payroll taxes, workmen's compensation and employer's liability insurance, and assumed certain other obligations for the benefit of plaintiff.

The original complaint of plaintiffs predicated the liability of Uniroyal only on the theory of negligence in failing to repair dangerously defective tires, which defect was known to Uniroyal and the other defendants. No products liability claim based on a breach of warranty, express or implied, was alleged in the original complaint. On December 9, 1974, Uniroyal's motion for a summary judgment against plaintiffs was granted, and Uniroyal was dismissed as a party defendant. Plaintiffs, on April 11, 1975, were granted leave to file a first amended complaint.

Plaintiff's first amended complaint alleged that his injuries resulted directly from the defective front tire blowing out, causing a collision. This first amended com-

plaint predicated the liability of Uniroyal upon the breach of express and implied warranties.

The summary judgment in favor of Uniroyal was based upon the first amended complaint and the responsive pleadings; the answers to interrogatories; and the response to a request for admissions and affidavits. The record in this case contains facts which required the application by the trial court of *Daniels* v. *MacGregor* (1965), 2 Ohio St. 2d. 89, which holds that a leased employee is an employee for workmen's compensation purposes of the party leasing the employee's services. Thus, for workmen's compensation purposes, plaintiff was an employee of Uniroyal at the time and place he was injured. Uniroyal is a complying employer within the meaning of the Ohio Workmen's Compensation Law. See R. C. 4123.35 and 4123.74.[1] Plaintiff also filed a workmen's compensation claim.

The first assignment of error states as follows:

"I. The trial court erred in sustaining defendant Uniroyal's motion to dismiss plaintiffs' first amended complaint.

"A. A litigant is not required to prosecute multiple causes of action in a single action.

"B. Plaintiffs' first amended complaint stated a cause of action separate and distinct from that stated in plaintiffs' original complaint.

"C. Plaintiffs' first amended complaint should not have been dismissed for reason of res judicata."

This assignment of error attacks the summary judgment entry on plaintiff's first amended complaint which expresses, as one reason for being granted, "that plaintiffs' complaint against defendant Uniroyal is subject to dismissal for reason of res adjudicata * * *." The summary judgment on the original complaint was held by the trial

---

[1] The pertinent part of R. C. 4123.74 reads as follows:

"Employers who comply with Section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by an employee in the course of or arising out of his employment * * *."

judge to be res judicata as to the damage claim asserted in the later first amended complaint, although the first amended complaint proceeded on a different theory—namely, products liability based upon a breach of express and implied warranties.

The application of the doctrine of res judicata to the facts and pleadings in this case is misplaced. The summary judgment rendered on December 9, 1974, for Uniroyal on the original complaint was not a final appealable order, since the trial court did not make an "express determination," pursuant to Civ. R. 54(B), that the entry was the final judgment. Its interlocutory character is also apparent from the fact that thereafter, on April 11, 1975, the trial court granted plaintiff leave to file a supplemental or amended complaint. The plaintiff, pursuant to such leave, filed instantor his first amended complaint. A summary judgment which is interlocutory; subject to revision before a judgment adjudicating all the claims of all the parties, pursuant to Civ. R. 54(B); or interlocutory, because it is superseded by a subsequent first amended complaint filed with leave of court, does not permit the application of the doctrine of res judicata to the allegations of the first amended complaint. *Coffman* v. *Federal Laboratories, Inc.* (C. A. 3, 1948), 171 F. 2d 94, *cert. den.* 336 U. S. 913; see 6 Moore's Federal Practice, paragraph 56.20 (3.-4); see, also, 32 Ohio Jurisprudence 2d 201, 396, 413, Judgments, Sections 4, 194, 209; Restatement of Judgments, Sections 1, 41, 43 and 52 (1942).

The first assignment of error is well taken.

The second assignment of error presents a novel and difficult issue. It reads as follows:

"II. The trial court erred in sustaining defendant Uniroyal's alternative motion for summary judgment.

"A. Plaintiffs' product liability cause of action was not subject to summary judgment on the basis of Revised Code Section 4123.74, since it did not arise out of the employer/employee relationship."

This assignment requires the interpretation of R. C. 4123.74, relative to the term "employers" and the phrase

"any injury * * * received or contracted by an employee in the course of or arising out of his employment * * *." Plaintiff asserts that he is not an injured employee seeking to recover damages from a negligent employer, but that he is a reasonably foreseeable user injured as a result of the explosion of a defective tire manufactured and sold by Uniroyal. Plaintiff asserts that his amended complaint states a cause of action for the breach of an implied and express warranty.

The second assignment of error raises the application of the dual-capacity doctrine and whether Uniroyal was acting in a second capacity that confers obligations upon it which are independent of those imposed upon it as an employer. See 2A Larson, Workmen's Compensation Law, Section 7280, where the author indicates that the most striking example of the principle was found in the California case of *Duprey* v. *Shane* (1952), 241 P. 2d 78, aff'd 249 P. 2d 8. At page 14-117, he states the following:

"The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer."

The author, citing the case of *Costanza* v. *Mackler* (1962), 34 Misc. 2d 188, 227 N. Y. S. 2d. 750, a truck case where a loose floor board struck the plaintiff, the truck being owned by a fellow employee rented to the employer, asserted that the question is whether there should be the obliteration of valuable and longstanding causes of action where the statutory language destroying that cause of action is unclear. Any doubt should be resolved in favor of preserving rather than abolishing the right. See 2 Larson, *supra* at page 14-123. In turning to the interpretation of the statute, the question arises whether under all the circumstances the action was based on the fact of employment or on some other relationship. See, 81 American Jurisprudence 2d 742, Workmen's Compensation, Section 53. A reference is made in the above text to the Michigan case of *Penagos* v. *North Detroit General Hospital* (1971), 35 Mich.

App. 554, 192 N. W. 2d 542, 50 A. L. R. 3d 501. In that case, the plaintiff, an employee of the defendant, cut her mouth on a foreign particle which was in a piece of pie she purchased in the employer's cafeteria on her lunch hour. The Court of Appeals of Michigan held that the plaintiff's case was based upon the vendor-vendee relationship and had nothing to do with the fact that she was employed by the defendant and, therefore, she was not required to first seek relief from the Workmen's Compensation Department. In doing so, the court affirmed the opinion of Horace W. Gilmore of the Wayne County Circuit Court. An Ohio case of similar import is *Tipple v. The High Street Hotel Co.* (1941), 70 Ohio App. 397. Paragraph 1 of the syllabus, which contains the facts and holding of the court, reads as follows:

"An employee was engaged by a hotel company in the operation of a cigar stand in the hotel and was solely responsible to the hotel for such operation. She worked eight hours per day and had no specific time off for meals. She had the right to make arrangements with other emloyees for the operation of the stand while she ate her meals. The hotel operated a restaurant near the stand, at which restaurant the employee was entitled to a 40 per cent discount, and at which place she frequently ate, keeping the cigar stand under observation and returning to it to wait upon customers. On the day in question the employee had reported for work and had not left the premises of her employer. She ordered her meal in the hotel restaurant and was in the act of eating the meal in the restaurant when she observed unattended customers at the cigar stand. She returned to the stand, waited upon the customers, and finished her meal at the stand. In an action by the employee against the hotel company to recover damages arising from food poisoning resulting from such meal, the hotel set up as a defense that this was an injury occurring in the course of, and arising out of, the employee's employment and was covered by the Workmen's Compensation Act, and that under Section 35, Article II of the Constitution, the employer was not liable to respond in dam-

ages. *Held*: The injury did not occur in the course of, and did not arise out of, the employment.''

A similar Ohio case is *Coston* v. *Carnegie-Illinois Steel Corp.* (1952), 69 Ohio Law Abs. 375. In this case, an employee was held not to be entitled to workmen's compensation for injuries suffered when he swallowed a fragment of glass concealed in a piece of pie which he had purchased from a factory store which was located on his employer's premises, but was apparently operated by an independent entrepreneur. The court quoted with approval the case of *In re McNicol* (1913), 215 Mass. 497, 102 N. E. 697, to the effect that an injury is received in the course of employment when it occurs while the workman is doing the duty which he is employed to perform and it arises out of the employment when it is apparent that a casual connection exists between the conditions under which the work is performed and the resulting injury. That court reasoned that such definitions would exclude from coverage any injury which occurs as a result of a hazard to which the workman would have been equally exposed apart from his employment.

In the instant case, the hazard was not necessarily one of employment, but was one common to the public in general. See Young, Workmen's Compensation Law of Ohio (2d ed., 1971), page 91 (1963). When the initiating cause is not a hazard of employment, there is no casual connection between the employment and the injury.

As is stated in Young, *supra* at 42: ''The rationale is that workmen's compensation is in the nature of an occupational insurance and is to be treated in the same manner as general insurance for this purpose. Multiple recovery by an injured employee is a situation which many employers find difficult to accept, but the concept is not unique to workmen's compensation.'' See, also, *Trumbull Cliffs Furnace Co.* v. *Shachovsky* (1924), 111 Ohio St. 791.

It was only a matter of circumstance that the tire on the truck in which the plaintiff was riding was a Uniroyal tire rather than a Sears, Goodyear or Goodrich. In recent years, corporations and employers have entered a variety

of fields and economic factors have promoted diversification rather than specialization. Conglomerates have become the rule.[2] A corporation's economic structure should not dictate the right of the injured to recover or that each new corporate merger erases a like number of causes of action.[3] For the foregoing reasons, the second assignment of error is well taken. Plaintiff should have his opportunity to establish a cause of action based upon product liability.

The judgment of the Court of Common Pleas of Ottawa County is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

BROWN, P. J., concurs.
WILEY, J., concurs in part and dissents in part.

WILEY, J., concurring in the ruling on the first assignment of error but dissenting as to the disposition by the majority of the court of the second assignment of error.

Robert Mercer (plaintiff), as an employee of Uniroyal, Inc., applied for and received workmen's compensation in the form of weekly benefits and a payment of medical bills for injuries arising out of his employment. He is estopped from maintaining an additional action for damages for the same injuries on any other theory. *Indus. Comm.* v. *Brosky* (1934), 128 Ohio St. 372; *Conrad* v. *Youghiogheny & Ohio*

---

[2] From 1955 to 1959, there was an annual average of 1,162 mergers. From 1960 to 1969, there were 1,664 mergers annually and by 1967 through 1969 there was an average of 3,605 mergers per year. Between 1962 and 1968, 110 of Fortune's 500 industrials were absorbed by mergers. See M. Green, B. Moore & B. Wasserstein, The Closed Enterprise System (1972), at p. 10-11.

[3] Uniroyal is reported to own or operate 80 plants and to market 1,200 product lines in 100 countries. Its products, in addition to tires, include chemicals, synthetic rubber, plastics, leisure products such as golf balls, bags, shoes, sports jackets, luggage, canoe hulls, garden hose, also transportation equipment including fan belts, batteries, instrument panels, and a host of other products too numerous to list. See Uniroyal, Inc. Annual Report, 1975 and Moody's Industrial Manual, Vol. 2, 1975.

*Coal Co.* (1923), 107 Ohio St. 387; *Lopez* v. *King Bridge Co.* (1923), 108 Ohio St. 1.

Even had plaintiff failed to apply for and receive workmen's compensation benefits, it is undisputed that he was entitled to such benefits for injuries received while in the course of his employment. This factual situation is significantly different from that in the cases cited in the majority opinion: *Panagos* v. *North Detroit General Hospital* (1971), 35 Mich. App. 554, 192 N. W. 2d 542, 50 A. L. R. 3d 501; *Tipple* v. *The High Street Hotel Co.* (1941), 70 Ohio App. 397; *Coston* v. *Carnegie-Illinois Steel Corp.* (1952), 69 Ohio Law Abs. 375. In these cases, the employee applied for and was denied workmen's compensation for the reason that the injuries were not received in the course of his employment. These cases, in fact, do not support the dual-capacity doctrine.

The logical thrust of the dual-capacity doctrine is that an employee may recover workmen's compensation benefits as an employee and may recover additional compensation in some other capacity; at least, the dual-capacity theory offers him a choice. 2A Larson, Workmen's Compensation Law, Section 72.80; *Duprey* v. *Shane* (1952), 241 P. 2d 78, aff'd 249 P. 2d 8; *Costanza* v. *Mackler* (1962), 34 Misc. 2d 188, 227 N. Y. S. 2d 750.

The dual-capacity doctrine is *contra* to the law of Ohio. The second sentence of Section 35, Article II of the Ohio Constitution reads as follows:

"Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

R. C. 4123.74 states:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any

employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

R. C. 4123.74 has been applied liberally in granting immunity to complying employers. As stated in the first paragraph of the syllabus of Bevis v. Armco Steel Corp. (1949), 86 Ohio App. 525, appeal dis. 153 Ohio St. 366, cert. den. 340 U. S. 810, reh. den. 340 U. S. 885:

"Under Section 35, Article II of the Constitution of Ohio, and Section 1465-70, General Code, the open liability of employers is abolished, and in every case where the injury, disease, or bodily condition occurred in or arose out of the employment, no matter how incurred, except self-inflicted, the Workmen's Compensation Act is the exclusive remedy, and such condition is either compensable under that law or not at all, and no action of any kind may be brought against a complying employer therefor." (Emphasis added.)

G. C. 1465-70, in the above quote is now codified as R. C. 4123.74. Compare Greenwalt v. The Goodyear Tire & Rubber Co. (1955), 164 Ohio St. 1, 7, wherein the Supreme Court of Ohio cited and explained the decision in Bevis, supra, and reaffirmed the immunity of a complying employer. It said, in the syllabus:

"1. An employer who complies with the Workmen's Compensation Act shall not be liable to respond in damages at common law or by statute for any injury, disease or death of an employee occurring during the period of such compliance."

See, also, State, ex rel. Allied Chemical Corp. v. Earhart (1974), 37 Ohio St. 2d 153, 155-156; State, ex rel. Engle, v. Indus. Comm. (1944), 142 Ohio St. 425; Sebek v.

*The Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693; *Roof* v. *Velsicol Chemical Corp.* (N. D. Ohio, 1974), 380 F. Supp. 1373.

"Under the common-law system by far the greater proportion of industrial accidents remained uncompensated, and the burden fell upon the workman, who was least able to support it.'" After many years of agitation because of this inequitable and inhumane situation, statutory relief was granted by way of workmen's compensation laws; the first state statute being enacted in New York in 1910. Ohio followed in 1911, and by 1921 all but a few of the American states had enacted such legislation. At the present time, they are in effect in all of the states. "The theory underlying the workmen's compensation acts never has been stated better than in the old campaign slogan, 'the cost of the product should bear the blood of the workman'. * * * Workmen's compensation is thus a form of strict liability. The employer is charged with the injuries arising out of his business, without regard to any question of his negligence, or that of the injured employee.'"

The majority laments the growth of conglomerates as a factor in erasing causes of action. I counter by saying that no causes of action have been erased; the injuries of all employees arising out of the course of employment are compensated under workmen's compensation acts, and the

'Prosser, Law of Torts (4th ed., 1971), Section 80.

'*Id.* Also, see 1 Schneider, Workmen's Compensation (2d ed. 1932), page 6.

The theory of workmen's compensation in Ohio was expressed in *State, ex rel. Munding,* v. *Indus. Comm.* (1915), 92 Ohio St. 434, 450, wherein the court said:

"And the theory upon which the compensation law is based (which is now generally accepted) is that each time an employe is killed or injured there is an economic loss which must be made up or compensated in some way, that most accidents are attributable to the inherent risk of employment—that is, no one is directly at fault—that the burden of this economic loss should be borne by the industry rather than by society as a whole, that a fund should be provided by the industry from which a fixed sum should be set apart as every accident occurs to compensate the person injured, or his dependents, for his or their loss."

conglomerate employer is granted only the same immunity from common-law actions of any kind as any other complying employer receives.

The majority opinion refers to a statement made by Larson to the effect that the question is whether there should be the obliteration of valuable and long-standing causes of action where the statutory language destroying that cause of action is unclear, and any doubt should be resolved in favor of preserving rather than abolishing the right. See, 2A Larson, *supra*. This quotation more appropriately supports the long-standing and valuable statutory protection afforded to complying employers under workmen's compensation laws against a cause of action, rather recently recognized, based on the product liability doctrine. *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227. Any doubt, then, should be resolved in favor of preserving rather than abolishing the statutory right of immunity.

As to the dual-capacity doctrine, this case is one of first impression, to our knowledge, in the state of Ohio. I respectfully submit that the immunity established under the Constitution of Ohio and implemented by the statutes pertaining to workmen's compensation, and as interpreted by the courts of Ohio, have created such an established doctrine of law that any change so fundamental as eliminating the immunity of the employer who complies with the statutory requirements should be brought about only by legislative action and probably only by a constitutional amendment.

I would find that the trial court did not err in sustaining Uniroyal's alternative motion for summary judgment.