Gerald F. HENNING, Plaintiff,

v.

GENERAL MOTORS ASSEMBLY DIVISION,
a/k/a Buick, Oldsmobile, Cadillac Group, both
of whom are divisions of General Motors
Corporation, and Royal Insurance Company of
America, a foreign insurance company,
Defendants and Third-Party Plaintiffs-
Respondents,

EMPLOYERS INSURANCE OF WAUSAU, and
Blue Cross & Blue Shield United of Wisconsin,
Involuntary Defendants,

CITY OF JANESVILLE, Involuntary Defendant-
Appellant,

PAUL REILLY CO., INC., Third-Party Defendant.

Supreme Court

*No. 86–1162. Argued January 5, 1988.—Decided March 2, 1988.*

(Also reported in 419 N.W.2d 551.)

3

For the involuntary defendant-appellant there were briefs (in court of appeals) by *Timothy J. Yanacheck* and *Straub & Schuch,* Madison, and oral argument by *Timothy J. Yanacheck.*

For the defendants and third-party plaintiffs-respondents there was a brief (in court of appeals) by *John H. Schmid, Jr., Paul W. Schwarzenbart* and *Brynelson, Herrick, Bucaida, Dorschel & Armstrong,* Madison, and oral argument by *John H. Schmid, Jr.*

Amicus curiae brief was filed by *Timothy J. Muldowney, Robert J. Dreps,* and *La Follette & Sinykin,* Madison, for the Wisconsin Insurance Alliance, Wisconsin Manufacturers & Commerce, Wisconsin Automobile & Truck Dealers Association, Wisconsin Utilities Association and Associated General Contractors of America, Inc., Wisconsin Chapter.

LOUIS J. CECI, J. This appeal is before this court on certification by the court of appeals, pursuant to sec. (Rule) 809.61, Stats. The City of Janesville (City), involuntary defendant-appellant, appeals from an order of the trial court denying the City's motion for summary judgment which was based upon the exclusive remedy provision of the Worker's Compensation Act, sec. 102.03(2).

The plaintiff, Gerald F. Henning, was an employee of the City of Janesville when he was injured during the course of his employment as a sanitary equipment operator. More precisely, on June 18, 1982,

4

Gerald Henning was at a landfill site in Janesville, in the process of unhooking the back end of the trash truck he was operating when the back door of an adjacent trash cube struck him. The trash cube was a component part of a truck owned and operated by General Motors. General Motors had purchased the trash cube from the City in 1975. It is uncontroverted that the City "routinely and customarily bought and sold street and sanitation equipment over the years in its effort to update its fleet."

Gerald Henning received worker's compensation benefits from the City for injuries suffered as a result of this accident. Subsequently, Henning commenced an action against General Motors, claiming negligent operation and maintenance of the General Motors truck involved in the accident. The City was named an involuntary defendant since, pursuant to sec. 102.29(1), Stats., an employer may be entitled to reimbursement for worker's compensation payments from damages awarded in a third-party suit. General Motors subsequently cross-claimed against the City for breach of warranty, negligence, and strict liability.

The City moved for summary judgment on the basis of worker's compensation immunity under sec. 102.03(2), Stats. The trial court denied this motion, finding the facts to present circumstances justifying exception to employer immunity under the dual capacity or dual *persona* doctrine.

The court of appeals certified the following issue:

> "Should Wisconsin adopt the 'dual capacity' test so that sec. 102.03(2), Stats., will not immunize an employer from liability, except under the Worker's Compensation Act, for an employee's injuries caused by or resulting from an act of the employer in a capacity other than employer, or

should Wisconsin adopt the 'dual persona' test so that an employer loses the immunity of sec. 102.03(2) only when the employer possesses, and acts in, a second persona so independent from and unrelated to his status as an employer that the law recognizes it as a separate legal person?"

Since this case is before this court on appeal from an order denying a motion for summary judgment, we apply the same standards set forth under sec. 802.08(2), Stats., as do the trial courts. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). The methodology applied by the trial courts, and likewise applied by this court, in determining whether a summary judgment should be granted first requires the court to examine the pleadings to determine whether a claim for relief has been stated. *Id.* If a claim for relief has been stated, the inquiry then shifts to determining whether there exists any genuine issue of material fact and, if no factual issue exists, whether the moving party is entitled to a summary judgment as a matter of law. *Id.* Our examination in the case at bar need go no further than to examine the pleadings, since we find, for the reasons set forth below, that under no circumstances could General Motors have recovered under the pleadings. The vital allegation absent from General Motors' cross-claim, and necessary to sustain a cause of action seeking to impose tort liability upon an employer who has paid worker's compensation benefits, is an allegation that the City was involved in the accident as a *persona* distinct from its status as an employer.

The issue before this court concerns the application of sec. 102.03(2), which provides in relevant part as follows:

"[T]he right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, and any other employe of the same employer and the worker's compensation insurance carrier."

More precisely, the present issue involves the operation of exceptions to the above-quoted rule of exclusivity of remedy under the doctrines of "dual capacity" and "dual *persona*." However, it should be noted that perhaps more fundamentally, an additional issue must be addressed. Specifically, the case at bar concerns a third party, General Motors Assembly Division, seeking indemnification or contribution from an employer, as opposed to an employee seeking additional compensation from his employer. The employee's right to bring an action against a third party is secured by sec. 102.29(1), Stats.[1] While this section

---

[1]Section 102.29(1) provides in part as follows:

"The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employe shall not affect the right of the employe, the employe's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages by reason of an injury to which ss. 102.03 to 102.64 are applicable, or the adjustment of any such claim, affect the right of the injured employe or the employe's dependents to recover compensation.

\* \* \*

If notice is given as provided in this subsection, the liability of the tort-feasor shall be determined as to all parties having a right to make claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows: After deducting the reasonable cost of collection, one-third of the remainder shall in any event be paid to the

7

delineates the right of the employer to obtain reimbursement for worker's compensation payments from damages awarded in a third-party action, the third party's entitlement to indemnification or contribution from the employer is not addressed. As to the latter issue, it has been observed:

> "The issue whether a third-person tortfeasor in an action by or on behalf of an injured or killed employee is entitled to contribution or indemnity from the employer, whose negligence has contributed to the employee's injury, has been labeled by one authority as perhaps the most evenly balanced controversy in all of workmen's compensation law." Annotation, *Modern Status of Effect of State Workmen's Compensation Act on Right of Third-Person Tortfeasor to Contribution or Indemnity From Employer of Injured or Killed Workman*, 100 A.L.R.3d 350, 354 (1980) (citing 2A A. Larson, Workmen's Compensation Law, sec. 76.10 (1976)).

While the courts have been "nearly unanimous" in barring a third party from obtaining contribution from the employer of an injured employee, jurisdictions have split with respect to whether a third-person tortfeasor is entitled to indemnification. *Id.* sec. 2, at 355, sec. 5.

The application of sec. 102.03(2), Stats., in an action by a third party seeking contribution and indemnification was recently addressed by this court

injured employe or the employe's personal representative or other person entitled to bring action. Out of the balance remaining, the employer or insurance carrier shall be reimbursed for all payments made by it, or which it may be obligated to make in the future, under this chapter, except that it shall not be reimbursed for any payments of increased compensation made or to be made under s. 102.18(1)(bp), 102.22, 102.35(3), 102.57 or 102.60."

in *Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 290 N.W.2d 276 (1980). In *Mulder,* we noted, but found insignificant, the distinction between actions for contribution and actions for indemnification insofar as sec. 102.03(2) was concerned. The issue presented in *Mulder* involved an employee who, as a result of injuries suffered at work, recovered worker's compensation benefits from Kohler Company and subsequently brought a third-party action against the designers and manufacturers of the machine which was involved in the injury. General Electric, one of the manufacturers, cross-claimed against Kohler Company for contribution and indemnification. The court commenced its analysis by noting that sec. 102.03(2) precludes a third party from recovering contribution from an employer: "Because the employer's liability is determined by statute, which makes that liability exclusive, and not by principles of common law negligence, this court has reasoned that the common liability between third parties and the employer requisite for a joint tortfeasor status is absent." *Id.* at 177. The court then further held that "[t]he same rationale bars an action for indemnification absent a specific and express agreement." *Id.* at 177–78. Accordingly, consistent with this court's interpretation of sec. 102.03(2) as precluding a third party from obtaining contribution or indemnification absent an express agreement, General Motors may not maintain its action for contribution or indemnification unless it can prevail in establishing an exception to this general rule under a dual *persona* or dual capacity analysis.

In this regard, we note the respondents' discussion of general principles of common law rights to indemnification. Respondents direct the court to the *Restatement (Second) of Torts,* sec. 886B at 344 (1979),

9

and *Barber-Greene Co. v. Bruning Co.,* 357 F.2d 31, 34 (8th Cir. 1966), for the principle that a supplier of a negligently produced and defective product may be held liable for indemnification for injuries caused by the use of the product. Such general principles are not before the court. Rather, the issue presented concerns the relationship of such general principles to the specific statutory provision of exclusivity of remedy against an employer.

The City argues that this court should substitute the "dual *persona*" doctrine in place of the previously articulated "dual capacity" test. The City asserts that it has not operated with a *persona* distinct from its status as an employer. Therefore, the City's argument concludes that should this court adopt the dual *persona* doctrine, it would not apply in the present case, and the exclusivity provision must consequently operate to bar the action for contribution or indemnification against the City.

General Motors maintains that this court should apply in the present case, as it has in the past, the "dual capacity" doctrine. Under a "dual capacity" analysis, General Motors asserts that the employer had an obligation to General Motors independent and distinct from the employer-employee relationship with Henning. This distinct obligation, General Motors argues, requires application of the dual capacity doctrine to permit General Motors to obtain contribution or indemnity from the City.

The foundation from which we approach the issue of the duality doctrine as an exception to the exclusivity of remedy provision under the worker's compensation law is one which was initially established by the legislature. Specifically, this court has observed:

"[W]orker's compensation laws constitute an all-pervasive legislative scheme which attempts to effect a compromise between the employer and the employee's competing interests. The worker is benefitted by certain recovery irrespective of his own fault and irrespective of the employer's absence of fault. Additionally, the worker's compensation legislation abrogated an employer's common law defenses of contributory negligence, assumption of risk, and the fellow-servant rule. Although the employer's defenses were abrogated, simultaneously the worker was obliged to accept a limited and scheduled compensation award. Worker's compensation laws are basically economic regulations by which the legislature, as a matter of public policy, has balanced competing societal interests." *Mulder,* 95 Wis. 2d at 180. *See also State v. Labor & Industry Review Commission,* 136 Wis. 2d 281, 286–87, 401 N.W.2d 585 (1987).

Accordingly, underlying those previous cases in which this court has addressed the dual capacity doctrine has been our concern that the "delicate balancing of the interests represented in our industrial society" established in the worker's compensation law not be unjustifiably disturbed. *Jenkins v. Sabourin,* 104 Wis. 2d 309, 322, 311 N.W.2d 600 (1981).

The first case which considered the possible application of dual capacity was *Gerger v. Campbell,* 98 Wis. 2d 282, 297 N.W.2d 183 (1980).[2] In *Gerger,* an

---

[2]Prior to *Gerger,* however, the notion of distinct capacities had been addressed in cases in which employees had sought to hold individuals liable as co-employees as permitted prior to the amendment of the worker's compensation law by ch. 195, sec. 2, Laws of 1977. *See, e.g., Laffin v. Chemical Supply Co.,* 77 Wis. 2d 353, 253 N.W.2d 51 (1977); *Lupovici v. Hunzinger Const. Co.,* 79 Wis. 2d 491, 255 N.W.2d 590 (1977); *Ortman v. Jensen & Johnson,*

employee sought to hold the president of a corporation liable in tort for modifications made to a machine which caused injury to the employee and for which the employee had received worker's compensation benefits. The employee asserted that tort liability should have been imposed on the president on the basis of his "dual capacity" as an officer of the corporation and as the owner of the machine which he leased for the corporation. With respect to this argument, the court held as follows:

> The crucial fact was that Campbell, as the officer of the corporation, in respect to the obligations he had to his corporate employer, modified the machine. Under such circumstances the dual-capacity test is not implicated. The function which Campbell performed negligently was directly related to the duty of the employer to furnish equipment and machinery for the employee. It had no functional relationship whatsoever with whether Campbell was the owner and lessor of the equipment. We do not conclude that the dual-capacity doctrine may not appropriately circumvent the immunity under the exclusive-remedy test in a proper case, but this is not such a case. *Id.* at 293.

Subsequently, in *Jenkins,* 104 Wis. 2d 309, the court again had occasion to examine a dual capacity analysis. In *Jenkins,* an employee who was injured while at work as a result of a prank of a co-employee commenced a third-party action against the fellow

*Inc.,* 66 Wis. 2d 508, 225 N.W.2d 635 (1975); *Kruse v. Schieve,* 61 Wis. 2d 421, 213 N.W.2d 64 (1973); *Wasley v. Kosmatka,* 50 Wis. 2d 738, 184 N.W.2d 821 (1971).

employee[3] who cross-claimed against the employer, alleging that the employer failed to exercise ordinary care in treating the employee's injury. The cross-claim was dismissed by order of the trial court, on the basis of the employer's immunity under the exclusivity provision of the Worker's Compensation Act. This court affirmed, finding that the employer's provision of medical care did not constitute a dual capacity. The court quoted Professor Larson's treatise for the proposition that the "'dual capacity' doctrine may result in the liability of an employer to an employee for tort (*i.e.,* the removal of the shield of the Workers Compensation Act as an exclusive remedy) only if the employer occupies 'a second capacity . . . *independent* of those imposed on him as an employer.'" *Id.* at 318 (quoting 2A A. Larson, Workmen's Compensation Law, sec. 72.80 (1981) (emphasis in original)). The court stated that, "What is significant is whether or not the function creates obligations that would exist absent those that inure by virtue to the employer's status." *Id.* at 319. Because the court determined that the obligation to provide medical service "stemmed wholly from" the employer's function, the employer's provision of medical care for injured employees was held not to create a dual capacity. *Id.* While a dual capacity analysis was applied, the court additionally noted: "[T]here was no second *persona.* The only *persona* here involved was the employer, whose obligations arose only under the Act." *Id.* at 320.

The reference to *persona* in *Jenkins* was more precisely addressed in *Schweiner v. Hartford Accident & Indemnity Co.,* 120 Wis. 2d 344, 354 N.W.2d 767 (Ct.

---

[3]Section 102.29, Stats., was amended subsequent to the time of the injury at issue in *Jenkins* to bar a common law action against a co-employee. *See* ch. 195, sec. 20, Laws of 1977.

App. 1984). In *Schweiner,* the court of appeals applied the dual *persona* doctrine, as opposed to the previously articulated dual capacity doctrine. While the narrower dual *persona* doctrine admits of fewer exceptions to the worker's compensation statutory immunity, the circumstances of *Schweiner* were found to be appropriate to warrant invocation of the doctrine. In *Schweiner,* the facts exemplified the precise circumstances in which a dual *persona* is present. Specifically, in *Schweiner,* an employee who had sustained injuries as a result of the malfunctioning of a molding machine at work obtained worker's compensation from his employer. Subsequently, the employee commenced an action against the manufacturer and distributor of a switch for the machine and their liability insurers. The switch manufacturer and its insurer sought contribution from the employer as successor to the liability of the company which had designed, manufactured, and assembled the molding machine. The court concluded that to provide worker's compensation immunity to the successor corporation would be contrary to sec. 180.67(5), Stats., which provides for successor responsibility for liabilities of a merged corporation.

We agree that in the case of a merger, a dual *persona* may exist such that the exclusivity provision of the worker's compensation law does not bar the imposition of liability on an employer who has paid worker's compensation benefits. The case of a merger was, in fact, discussed by Larson as demonstrating "a genuine case of separate legal personality .... " 2A A. Larson, Workmen's Compensation Law, sec. 72.81 at 14–234 (1987). However, the situation in the case at bar is one in which the employer must not be stripped

14

of the *quid pro quo* protection of immunity under sec. 102.03(2). To permit the circumvention of the exclusivity provision of worker's compensation law in the present case by application of the dual capacity or dual *persona* doctrine would upset the "delicate balancing of the interests represented in our industrial society" reflected in the worker's compensation system. *Jenkins,* 104 Wis. 2d at 322.

■ The dual *persona* doctrine applied in *Schweiner* is now favored by Professor Larson. Under this doctrine, "An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A A. Larson, *supra,* sec. 72.81 at 14–229. This formulation was made by Larson in order to "correct the looseness and overextension attending the so-called 'dual capacity' doctrine. In a sense, a single legal person may be said to have many 'capacities,' since that term has no fixed legal meaning." *Id.* In *Jenkins* and *Gerger,* this court discussed dual capacity. In neither case did the court find a dual capacity to exist such that the employer's immunity could be avoided. Consequently, this doctrine has not been so loosely applied in Wisconsin as to have been "overextended." Nevertheless, because of the broader language applied in describing the dual capacity doctrine and the consequential danger that the doctrine could in the future be employed as a vehicle for the abuse of the duality exception, we now adopt the narrower theory of dual *persona.* The case at bar marks an appropriate example of the potential abuse

15

which could result from the continued application of dual capacity.

More specifically, in *Jenkins,* the court stated that, "What is significant is whether or not the function creates obligations that would exist absent those that inure by virtue of the employer's status." 104 Wis. 2d at 319. Here, the function of selling trash cubes to the public arguably creates duties which would exist absent obligations that "inure by virtue of the employer's status." Accordingly, under a dual capacity analysis, an employer could potentially become vulnerable to contribution or indemnification in a case such as the one at bar, notwithstanding the fact that "[t]he only *persona* here involved was the employer .... " *Id.* at 320. It is precisely this type of contingency which the breadth of the dual capacity doctrine permits that threatens the balance of equities struck by the legislature in the worker's compensation system. For this reason, we follow Larson's "jettison" of the "dual capacity" doctrine for the narrower "dual *persona*" doctrine. 2A A. Larson, *supra* p. 11, sec. 72.81 at 14–230.[4]

Those cases cited by the respondents in support of the dual capacity doctrine epitomize the epidemical abuse which has propagated from the birth of the dual capacity doctrine. *See, e.g., Mercer v. Uniroyal, Inc.,* 49 Ohio App. 2d 279, 361 N.E.2d 492 (Ct. App. 1976) (dual capacity applied to permit employee to maintain action for damages against employer for allegedly defective manufacture of tire which blew out, injuring

---

[4]For a compilation of other jurisdictions which have also rejected the concept of dual capacity, see generally Annotation, *Modern Status: "Dual Capacity Doctrine" As Basis For Employee's Recovery from Employer in Tort,* 23 A.L.R.4th 1151, sec. 4 (1983). *See also infra* note 7.

employee during course of employment); *Bell v. Industrial Vangas, Inc.,* 30 Cal. 3d 268, 637 P.2d 266, 179 Cal. Rptr. 30 (1981) (employee action against employer for injuries suffered while delivering allegedly defective product manufactured by employer not barred given finding of dual capacity). The jurisdictions of Ohio and California, from which *Mercer* and *Bell* emanate, have been recognized as uniquely generous in the application of the dual capacity doctrine. *See* 2A A. Larson, *supra* p. 17, sec. 72.83 at 14–239. The legislature in California, however, has responded by statutorily precluding application of the dual capacity doctrine to circumvent the worker's compensation provision for exclusivity. *See* Cal. Lab. Code sec. 3602 (West Supp. 1988). The problem underlying the abuse lies not so much in the semantics distinguishing dual capacity from dual *persona,* but in the fact that the application of the doctrine has convoluted the principle that it is the relationship between the employee and employer which may justify exception to exclusivity and not the obligation which the employer may have to the public. An employer will, in most, if not in all, conceivable circumstances have an obligation to a third party distinct and independent of those which it has towards its employee. In proper circumstances, the third party may recover from the employer. However, when the recovery sought by a third party is indemnification or contribution from the employer for an injury suffered by an individual injured during the course of employment, *Mulder* quashes the relevance of that independent obligation; recovery may be had only when the employer has operated in a distinct *persona* as to the *employee.*

17

As to this issue, we note the respondents' position, which emphasizes the independent obligation running to the third party, General Motors, as the basis for denying worker's compensation immunity. Respondents rely, for example, upon *United States Fidelity & Guaranty Co. v. Kaiser Gypsum Co.*, 273 Or. 162, 539 P.2d 1065 (1975),[5] and *Pan American Petroleum Corp. v. Maddux Well Service*, 586 P.2d 1220 (Wyo. 1978), for the proposition that an employer may not be entitled to worker's compensation immunity against a third party's claim for indemnification. These decisions are, however, inapposite to the case at bar. Neither *Kaiser Gypsum* nor *Pan American* concerned duality concepts; rather, both addressed the distinct issue of whether worker's compensation exclusivity provisions bar a third party's cause of action for indemnification against an employer. As discussed more completely above, in Wisconsin, in the absence of an express indemnification agreement, a third party may not circumvent the exclusive remedy provisions set forth under sec. 102.03(2) by claiming the existence of an independent duty owned by an employer to a third party. The question which is relevant in the present

---

[5]Significantly, the Oregon legislature amended the worker's compensation law to "overturn the principle of *Kaiser Gypsum.*" *Boldman v. Mt. Hood Chemical Corp.*, 288 Or. 121, 124 n. 1, 602 P.2d 1072, 1074 n. 1 (1979). Moreover, *Kaiser Gypsum* cited Wisconsin law in its discussion of *contra* case law. *Kaiser Gypsum*, 273 Or. at 174, 539 P.2d at 1070–71 (discussing *A. O. Smith Corp. v. Associated Sales & Bag Co.*, 16 Wis. 2d 145, 113 N.W.2d 562 (1961)). If respondents favor the views articulated in *Kaiser Gypsum* and *Pan American Petroleum Corp. v. Maddux Well Service*, 586 P.2d 1220 (Wyo. 1978), their challenge should have been not to duality concepts but to the *Mulder* holding.

case, but not addressed in either *Kaiser Gypsum* or *Pan American,* is the nature of the relationship and obligations between the employer and employee and whether such relationship had, as to the injury under consideration, changed to the extent that the employer's *persona* was distinct from its status as an employer.

The circumstances in which a dual *persona* will be found are limited: Larson's treatise has described those situations in which the dual *persona* exists as where the duality is "firmly entrenched in common law or equity" or where the duality is one created by modern statute. 2A A. Larson, *supra* p. 19, sec. 72.81 at 14–232. Although not expressed in terms of dual *persona,* a duality which would be recognized under this doctrine was discussed in *Mazurek v. Skaar,* 60 Wis. 2d 420, 210 N.W.2d 691 (1973). In *Mazurek,* several national guardsmen had been injured while being transported by a fellow guardsman. The state argued that because the guardsmen were employees under sec. 102.07(9), Stats., sec. 102.03(2) operated to exculpate the state from liability for the judgment entered against the driver for injuries to the other guardsmen. However, the court held that because sec. 21.13, requires the state to pay judgments entered against a national guardsman acting in good faith, the payment was not excused under sec. 102.03(2). The court specifically found that, "The state is herein wearing two hats, that of employer and that required of it under sec. 21.13." *Id.* at 427. Stated otherwise, the situation presented in *Mazurek* was a statutorily created duality as to which the dual *persona* doctrine could approximately be applied.[6]

[6] An additional example of a situation in which a dual *persona* may exist was well presented in *Wright v. United States,* 717 F.2d

Because of the amorphous nature of the dual capacity doctrine, its application to the present case would be uncertain. Contrariwise, the facts before us do not present a difficult scenario in which to address the application of a dual *persona* analysis. The fact that the trash cubes were sold to the public creates obligations to the public; however, where, as here, the injury which occurred as a result of an allegedly defective product was to an employee who has collected worker's compensation for that injury, the obligation does not, as a consequence of the employer's immunity inextricably built into our worker's compensation system, give rise to liability unless the employer has acted in a *persona* distinct from its status as employer. This is, under *Mulder*, true regardless of whether it is the employer who is being sued directly by the employee or the defendant in a

---

254 (6th Cir. 1983). In *Wright*, an employee was injured, allegedly as a consequence of medical services performed by her employer upon her. Unlike the situation at issue in *Jenkins*, the employer in *Wright* was primarily a health care provider, and medical attention provided was not for a work injury, but for pregnancy complications. The court applied the dual capacity doctrine but articulated the dual *persona* standard as the test to be applied in determining the existence of a dual capacity. The court held that the exclusivity of remedy provision under the federal Employees Compensation Act did not bar the action against the employer. The court explained that the duality exception "merely allows the employee to sue his employer where the employer-employee relationship does not exist because the employer is acting in a second persona unrelated to his status as employer." *Id.* at 259. Under this analysis, the court in *Wright* accordingly determined that a duality did exist and held that the employer might be held liable for a common law cause of action. The plaintiff in *Wright* was injured as a consequence of her relationship, having been changed from employee to patient. In the case at bar, no such change occurred.

20

third-party action who is seeking contribution or indemnification from the employer. The injury in the case at bar arose incidental to, and only as a result of, Henning's performance of an integral part of his job as a sanitation equipment operator for the City. Such an injury is the precise sort for which the worker's compensation system operates to provide prompt and assured recovery and as to which the exclusivity provision should operate to provide immunity. No distinct *persona* was implicated in Henning's injury.

Wisconsin is not alone in refusing to extend duality principles to permit product liability actions against employers: "The great majority of American jurisdictions hold that an employer, who is also the manufacturer, modifier, installer, or distributor of a product used in the work, cannot be held liable in damages to his own employee on a theory of products liability." 2A A. Larson, *supra* p. 14 sec. 72.83 at 14–239. In so holding, some courts, however, have not completely rejected the concept of dual capacity, but rather have limited the application of the dual capacity doctrine to those instances where the employer has acted with a second *persona. See, e.g., Weber v. Armco, Inc.,* 663 P.2d 1221, 1225–26 (Okla. 1983) ("Application of the dual-capacity doctrine requires that the second persona of the employer be completely independent from his obligations as an employer."). However, whether the dual capacity doctrine is replaced with the dual *persona* doctrine or the application of the dual capacity doctrine is limited to circumstances where there exists a dual *persona,* the result is effectively the same. Nevertheless, we are not inclined to preserve the dual capacity doctrine even with the limitation that the doctrine be applied only where there is a distinct *persona.* While the result is the

same, to avoid any potential confusion, we adopt the dual *persona* standard, not as a definitional limitation upon the dual capacity doctrine, but as the doctrine substituted for what had previously been articulated as the dual capacity test.

The Supreme Court of Alaska similarly rejected the dual capacity doctrine in *State v. Purdy,* 601 P.2d 258 (Alaska 1979). Consequently, the court held the exclusivity of remedy provisions of the worker's compensation laws operated to bar an action by a state employee who had received worker's compensation. The employee had filed an action alleging that the state failed to properly maintain the highway on which the accident occurred. The Alaska Supreme Court stated:

> "Whatever frail vitality the dual capacity doctrine has in other jurisdictions, we do not think that it warrants adoption here. To do so might undermine extensively the policy sought to be achieved by the workmen's compensation act. There are endlessly imaginable situations in which an employer might owe duties to the general public, or to non-employees, the breach of which would be asserted to avoid the exclusive liability provision of our statute. It would be an enormous, and perhaps illusory, task to draw a principled line of distinction between those situations in which the employee could sue and those in which he could not. The exclusive liability provision would, in any event, lose much of its effectiveness, and the workmen's compensation system as a whole might be destabilized. For these reasons, and because of the persuasiveness of case law from other jurisdictions rejecting it, we reject the dual capacity

doctrine as the law of this state." *Id.* at 260 (footnote omitted).[7]

■

Finally, we note that a second *persona* is not created merely because the product which has injured the employee is one which was sold to the public. For example, in a recent and factually analogous case, the Supreme Court of Minnesota, in *Kaess v. Armstrong Cork Co.*, 403 N.W.2d 643 (Minn. 1987), considered a tort claim promoted by an employee who, allegedly as a consequence of installing asbestos materials and smoking, developed and died from lung cancer. His widow received worker's compensation benefits. The heirs of the estate subsequently brought a wrongful death action against the employer as the manufacturer and distributor of the asbestos product. The court quoted Larson's criticism of the dual capacity theory and noted that even if the court were to recognize dual capacity, it would not be applicable in that case.

---

[7]*See also Sharp v. Gallagher,* 95 Ill. 2d 322, 447 N.E.2d 786 (1983) (requiring distinct separate legal *persona* for exception to exclusive liability); *Hyman v. Sipi Metals Corp.,* 156 Ill. App. 3d 207, 509 N.E.2d 516 (Ct. App. 1987) (dual capacity concept eliminated in favor of dual entity concept); *Egeland v. State,* 408 N.W.2d 848 (Minn. 1987) (court refuses to apply dual capacity doctrine in a case in which an employee sought application of the dual capacity doctrine as to the state government); *Davis v. Sinclair Refining Co.,* 704 S.W.2d 413 (Tex. Ct. App. 1985) (dual capacity rejected and dual *persona* not applied in context of merger; court of appeals decision in *Schweiner* discussed); *Corr v. Willamette Industries, Inc.,* 105 Wash. 2d 217, 713 P.2d 92 (1986) (court rejects dual capacity doctrine). Also refusing to apply dual capacity: *Therrell v. Scott Paper Co., Inc.,* 428 So. 2d 33 (Ala. 1983); *Neal v. Roura Iron Works, Inc.,* 66 Mich. App. 273, 238 N.W.2d 837 (Ct. App. 1975); *Herron v. Pack and Co.,* 705 P.2d 587 (Mont. 1985); *Rios v. Nicor Drilling Co.,* 665 P.2d 1183 (Okla. 1983).

Moreover, the court noted that the employer could not be held liable under a dual *persona* analysis since "[t]here is no claim in this case that [the employer's] manufacturing and distributing operations were a separate legal entity from the contracting operation which employed [the deceased]." *Id.* at 645–46.[8]

---

[8]For additional cases holding that worker's compensation remains the exclusive remedy against an employer notwithstanding the public sale or distribution of allegedly defective products causing injury, see generally Annotation, *Workmen's Compensation Act As Furnishing Exclusive Remedy For Employee Injured By Product Manufactured, Sold, or Distributed by Employer,* 9 A.L.R.4th 873, sec. 5(a) (1981); *Profilet v. Falconite,* 56 Ill. App. 3d 168, 371 N.E.2d 1069 (Ct. App. 1977); *Longever v. Revere Copper and Brass, Inc.,* 381 Mass. 221, 408 N.E.2d 857 (1980). *See also Mapson v. Montgomery White Trucks, Inc.,* 357 So. 2d 971, 972 (Ala. 1978) (court rejected the employee's contention that worker's compensation exclusivity did not apply since the employer wore two hats as: (1) an employer and (2) a seller of goods to the public; the court emphasized that the situation did not present a dual capacity since the employer "did not undertake any special independent relationship toward [the employee] other than that of employer-employee"); *Toth v. Westinghouse Elevator Co.,* 114 Ill. App. 3d 905, 908, 449 N.E.2d 1005, 1007 (Ct. App. 1983) (Illinois Court of Appeals refused to find an employer who manufactures elevators to have a separate *persona* as to an employee injured while repairing an elevator which had been sold to a customer and held that the action for damages was "nonactionable since it merely alleges a separate theory of liability against a single legal entity . . . ."); *Kosowan v. MDC Industries, Inc.,* 319 Pa. Super. 91, 99, 465 A.2d 1069, 1072–73 (1983) ("The fact that Kosowan's employer owed a duty to the general public as a manufacturer and retailer of goods is not alone sufficient to create an exception to the provisions of the Workmen's Compensation Act which provide that employers are immune from their employees' suits for injuries within the course and scope of employment"). However, California and Ohio courts have held otherwise, holding that

That the trash cubes were sold to members of the consuming public, and that an employee of the City had the misfortune to be injured by one of those trash cubes which had been sold, does not indicate that the City's *persona* changed as to the injured employee. Stated otherwise, the fact that a city may, as an entity, operate in a manner such as to create obligations flowing to the general public does not obliterate the fact that those obligations are taken upon by the same entity which exists as an employer. The inherent nature of a governmental entity requires that it function in numerous capacities. Public obligations attach to most of those capacities in which a governmental entity operates insofar as the operations are undertaken for the public welfare. Consequently, attempts to subdivide cities into different departments in order to avoid statutory exclusivity of remedy provisions have been consistently rejected. *See generally* 2A A. Larson, *supra* p. 14, at sec. 72.85(b) and sec. 72.85(c).[9] The case at bar does not even present an

worker's compensation is not an employee's exclusive remedy where the product is offered for sale to the general public. Annotation, *Workmen's Compensation Act As Furnishing Exclusive Remedy, supra,* at secs. 2 and 5(b). But see Cal. Lab. Code sec. 3602 (West Supp. 1988), limiting application of dual capacity.

[9]Notably, even in Ohio, recognized as one of the most liberal jurisdictions in the application of the dual capacity doctrine, 2A A. Larson, *supra* p. 14, sec. 72.83 at 14–239, the supreme court rejected a dual capacity claim against a governmental entity in *Freese v. Consolidated Rail Corp.,* 4 Ohio St. 3d 5, 445 N.E.2d 1110 (1983). In *Freese,* a motorcycle policeman was injured while on duty when one of the wheels of the motorcycle he was operating caught in a depression adjacent to a railroad track, causing his motorcycle to overturn. The court rejected the police officer's claims that the city had an obligation to him as a municipality to keep its streets in good repair, which was distinct from its

attempt to subdivide a governmental entity into departments; the same department which employed Henning routinely and customarily sold the allegedly defective sanitation equipment. Significantly, the sale of the trash cubes was a natural consequence of the trash collection operations of the city department of public works. Thus, while obligations to the general public may have grown from the sale of trash cubes, those obligations were undertaken by the same entity which employed Henning.

The only injury suffered by Henning was during the course of his employment. While an employee may, by virtue of sec. 102.29, Stats., bring an action against a third party, the third party may not receive contribution or indemnification from the City in the present case, since the employee has failed to establish the involvement of the City in his injury as a *persona* distinct from its status as an employer. To permit such a right of contribution or indemnification to a third party in the facts *sub judice* would circumvent the exclusive remedy provision built inextricably into the worker's compensation system. We have previously deferred to the legislative balance of interests pronounced in the worker's compensation scheme and have maintained: "New liabilities on employers or employees should not be imposed by courts without compelling and well understood reasons. ... To the extent that the present law may be disparate, un-

obligation to him as an employer. The court stated that although there existed a statutory obligation "upon the city to keep the streets clear and free from nuisance for the benefit of the general public, the statute does not generate obligations to this employee independent of and unrelated to the city's obligation as an employer." *Id.* at 11, 445 N.E.2d at 1115.

26

equal, or uneven in its application, it is a question for the legislature to address." *Jenkins,* 104 Wis. 2d at 323. Our commitment to refrain from upsetting the balance achieved by the worker's compensation law has not diminished. For this reason, we reverse the circuit court's order denying the City's motion for summary judgment and remand with directions to grant the motion.

*By the Court.*—The decision of the circuit court is reversed, and the cause is remanded with directions to enter an order granting the City's motion for summary judgment.