# KENOSHA BEEF INTERNATIONAL, INC., Plaintiff-Respondent, †

v.

# NORTH RIVER INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 88–1837. Submitted on briefs June 13, 1989.—Decided July 19, 1989.*

(Also reported in 445 N.W.2d 703.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey A. Schmeckpeper* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas B. Hartley* of *Heide, Hartley, Thom, Wilk & Guttormsen* of Kenosha.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   North River Insurance Company (North River) appeals from a grant of summary judgment requiring it to pay $20,000 under its worker's compensation and employers' liability policy insuring Kenosha Beef International, Inc. (Kenosha Beef), and Birchwood Transport, Inc. The sum of $20,000 had previously been paid by Kenosha Beef to Wallace Delaney, one of Birchwood Transport's employees, who was injured while working on Kenosha Beef's premises. We conclude that the trial court erred in its interpretation of the policy. Accordingly, we reverse and remand for judgment to be entered in favor of North River.

Delaney was injured when he fell into a truck service pit on the premises of Kenosha Beef. At the time, Delaney was acting within the scope of his employment by Birchwood Transport, a wholly-owned subsidiary of Kenosha Beef.

Both corporations, as well as another subsidiary not involved in this litigation, are named insureds under a worker's compensation and employers' liability policy issued by North River. These corporations also carry a comprehensive general liability policy through Continental Insurance Company (Continental).

Delaney received worker's compensation benefits from North River on behalf of his employer, Birchwood Transport. Delaney then commenced an action against Kenosha Beef, alleging that it was negligent in failing to guard the truck service pit. North River refused the defense of the action, and Kenosha Beef was defended by its general liability carrier, Continental. Upon settlement of the claim, Kenosha Beef paid Delaney $20,000 and Continental paid the balance of the sum. The $20,000 was the retained limit (or deductible) under the policy.

Kenosha Beef then commenced this action against North River, alleging that coverage existed under North River's worker's compensation and employers' liability policy for Delaney's claim against Kenosha Beef. Both parties filed motions for summary judgment. The trial court concluded that North River's policy was applicable and granted judgment to Kenosha Beef for $20,000 plus costs. North River appeals.

■

The sole issue is whether coverage exists under North River's policy. Construction of an insurance policy is a question of law which is reviewed without deference to the trial court's decision. *Kremers-Urban Co. v.*

*American Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984).

The phrase in the policy upon which the case turns is paragraph B.4., set forth below:

> The damages we will pay, where recovery is permitted by law, include damages:
>
> . . ..
>
> 4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

Kenosha Beef argues that this language covers Delaney because he was employed by an insured (Birchwood Transport), his injury arose out of that employment, his claim is against an insured (Kenosha Beef), and the claim is made in a capacity other than as employer (third-party owner of Birchwood Transport). This construction is in part made possible by the trial court's finding that, although the three companies are separate legal entities, the insurance policy covers them as a single entity. We disagree with both the premise and the conclusion.

The policy lists as insureds Kenosha Beef, Birchwood Transport, and Birchwood Meat & Provisions, Inc. The Birchwood companies are wholly-owned subsidiaries of Kenosha Beef. The plain language of the policy itself recognizes that the companies are separate insureds:

> The insured first named in item 1 of the Information Page will act on behalf of all insureds to change this policy . . ..

Even if we were to find the policy ambiguous, rules of construction would lead to the same conclusion.

Insurance policies should be construed in accordance with what a reasonable person in the position of the insured would have understood the words to mean. *Id.* A reasonable person in the position of an insured would construe this policy to apply separately to each entity. Otherwise, coverage would be significantly reduced.[1]

Turning now to the applicable policy language, Kenosha Beef would have us construe paragraph B.4. to allow claims by an employee of one insured against another insured. In doing so, Kenosha Beef would interpret the pronouns "you" and "your" to have different meanings in different places within the same paragraph. For example, paragraph B.4. would be read to cover damages "because of bodily injury to [Birchwood Transport's] employee . . . claimed against [Kenosha Beef] in a capacity other than as employer."

This interpretation is not borne out by the plain language nor by standard rules of construction. A pronoun takes its meaning from its antecedent. *Breier v. Balen,* 114 Wis. 2d 237, 249, 338 N.W.2d 304, 310 (Ct. App. 1983). Here, there is no word between the first and second pronoun which could act as an antecedent to change the meaning of the second pronoun. Nor is there anything in the policy which would modify this general rule.

---

[1] Even if the corporations were treated as a single entity, Kenosha Beef's claim would ultimately fail. As pointed out by North River, if the insured were a single entity, Delaney's recovery would be limited to worker's compensation payments because he would be deemed the employee of that single entity. *See Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 718 P.2d 920, 925 n. 2 (Cal. 1986).

Finally, Kenosha Beef argues that this case presents the exact situation which paragraph B.4. was designed to cover. We disagree. Both parties state that this language covers "dual capacity" situations, citing *Henning v. General Motors Assembly Division,* 143 Wis. 2d 1, 419 N.W.2d 551 (1988). However, *Henning* abandoned the doctrine of "dual capacity" in favor of the narrower theory of "dual persona." *Id.* at 15, 419 N.W.2d at 556. This should not affect the parties' arguments, however, because if paragraph B.4. covers dual capacity situations, it would also cover dual persona situations.[2]

The prior dual capacity test looked to whether the employer had an obligation to the employee which was independent and distinct from the employer-employee relationship. *Id.* at 13, 419 N.W.2d at 555. A classic example of dual capacity appears in *Mercer v. Uniroyal, Inc.,* 361 N.E.2d 492 (Ohio Ct. App. 1976), *cited in Henning,* 143 Wis. 2d at 16–17, 419 N.W.2d at 556–57. There, the employee sued the employer in its capacity as the manufacturer of a defective tire which injured the employee while on the job.

The dual persona doctrine allows a lawsuit by the employee only if the employer possesses a second persona so completely independent from and unrelated to its status as employer that the law recognizes it as a separate legal person. *Henning,* 143 Wis. 2d at 15, 419 N.W.2d at 556. Dual persona was the basis for the employer's liability in *Schweiner v. Hartford Accident & Indem. Co.,* 120 Wis. 2d 344, 354 N.W.2d 767 (Ct. App.

---

[2] Furthermore, the insurance policy only covers damages which the insured is legally liable to pay. Under the law as articulated by our supreme court, an employer is no longer liable to pay when it has only a dual capacity towards the employee but not a dual persona.

1984), *cited in Henning,* 143 Wis. 2d at 13–14, 419 N.W.2d at 555–56. In *Schweiner,* the employee was injured by a malfunctioning molding machine. He sued the manufacturer and distributor of a switch for the machine, and the manufacturer sought contribution from the employer as the successor corporation, through merger, to the company which manufactured the machine. The court concluded that the company had two personas—one as corporate employer and the other as a survivor of the merger. *Schweiner,* 120 Wis. 2d at 352, 354 N.W.2d at 772.

Either of the above situations would fall within the language of paragraph B.4. because, in each case, the employer has an additional relationship to the employee, hence the terms "dual capacity" and "dual persona." We cannot, however, draw the conclusion urged by Kenosha Beef that a similar situation is presented here. A dual persona situation requires the employer to possess a second persona. *Henning,* 143 Wis. 2d at 15, 419 N.W.2d at 556. Here, the employer is Birchwood Transport. The "second persona" urged by Kenosha Beef is a separate corporation (Kenosha Beef) which is not Delaney's employer nor, as we and the trial court have previously concluded, is it the same legal entity as the employer. Thus, no duality can exist.

■■

We conclude that the trial court erred in its interpretation of the insurance policy. Kenosha Beef and Birchwood Transport are separate insureds, and liability under paragraph B.4. cannot be premised upon an employee of one insured suing another insured. We reiterate that this policy is one for worker's compensation and employers' liability only. Because Kenosha Beef was not Delaney's employer, coverage was more appropriately provided through its comprehensive general liabil-

ity carrier, Continental, including Kenosha Beef's retained limit of $20,000 under that policy. We therefore reverse and remand with directions that judgment be entered in favor of North River.

*By the Court.*—Judgment reversed and cause remanded with directions.